IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
(Martinsburg Division)

**FILED**

**JUN 13 2013**

U.S. DISTRICT COURT
MARTINSBURG, WV 25401

ESTATE OF WAYNE A. JONES,
BY ROBERT L. JONES AND BRUCE A. JONES,
ADMINISTRATORS OF THE
ESTATE OF WAYNE A. JONES,

Plaintiffs,

v.

Docket No.: 3:13-cv-___

THE CITY OF MARTINSBURG, WEST VIRGINIA,
MARTINSBURG POLICE DEPARTMENT,
and DOES 1 TO 25,

Defendants.

## COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

### JURISDICTION

1.      The Complaint seeks remedies, pursuant to Title 42, United States Code, §§1983 and 1988, as well as the laws of the State of West Virginia.  Jurisdiction is conferred upon the United States District Court by Title 28, United States Code, §§1331 and 1343.

2.      The state law claims for relief are within the supplemental jurisdiction of this Honorable Court, pursuant 28 U.S.C. § 1367.

### VENUE

3.      Venue is therefore proper in the Northern Division of West Virginia, pursuant to Title 28, United States Code §1391(b).

### THE PARTIES

4.      Plaintiffs, Robert L. Jones and Bruce A. Jones, collectively, are the personal representatives of the Estate of Wayne A. Jones (hereinafter referred to as "decedent Jones") and they bring these claims in said capacity.  The Administrators are residents of Winchester, Commonwealth

1

of Virginia, and commence this action, pursuant to the W. Va. Codes §§55-7-5 and 55-7-6, and federal civil rights law.   A copy of the *Letter of Administration,* duly issued by the Fiduciary Supervisor of the Berkeley County Council, pursuant to W. Va. Code §44-1-12, is attached hereto and marked as Plaintiffs' Exhibit "A".

5.      Wayne A. Jones, deceased, was an adult under prescribed medications for a mental illness known as "schizophrenia", inter alia.

6.      Defendant City of Martinsburg is a public entity, duly incorporated and existing under the laws of the State of West Virginia.   The City of Martinsburg oversees and operates the Martinsburg Police Department (hereinafter referred to as "MPD"), which employs the remaining defendants in this action.

7.      At all times alleged herein, defendant MPD is an entity, duly incorporated and existing under the laws of the State of West Virginia and operates in the City of Martinsburg, Berkeley County, West Virginia, as a police department with an obligation to protect and serve the public community.   Officers of the MPD were acting within the course and scope of their employment. Supervisory employees of MPD are officials with final policy-making authority regarding the supervision, discipline, and training of MPD officers for the City of Martinsburg.

8.      Plaintiffs are ignorant of the true names and capacities of defendants Does 1 to 25, and therefore sue these defendants by such fictitious names.   Plaintiffs are informed and believe and thereon allege that each defendant so named is responsible in some manner for the injuries, death, damages and deprivation of constitutional rights suffered by decedent Jones, as described in this Complaint.   Plaintiffs will amend their Complaint to state the true names, capacities and basis for liability of defendants Does 1 to 25 when their identities have been disclosed by defendants City of

Martinsburg and the MPD.  Any reference in this Complaint to "defendant," "defendants," or to an individually-named defendant also refers to defendants Does 1 to 25.

9.     The acts and omissions of all defendants alleged herein were, pursuant to a criminal scheme, custom, policies practices and procedures of the MPD.  Moreover, each defendant acted under the color of the laws, statues and regulations of the State of West Virginia.  Finally, each defendant named in this Complaint acted as the agent or employee of every other defendant named herein.

**FACTS**

**A.     General Allegations on Policy and Practice**

10.    Plaintiffs are informed and believe, and on the basis of such information and belief allege, that the governmental entity defendants' and their decision makers, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of decedent Jones, and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, or customs and usages of, among other things:

a.     Subjected decedent Jones to an unreasonable uses of force against his person;

b.     Selecting, retaining, and assigning employees with demonstrable propensities for excessive force, violence, and other misconduct;

c.     Failing to adequately train, supervise, and control employees in the dangers of repeated Taser shocks, including, without limitation, the use of potentially lethal tactics, including multiple Taser shocks followed by restraint, for taking into custody decedent Jones, who was perhaps mentally ill, but not otherwise engaged in criminal activity, and who may had a pre-existing medical conditions which make such tactics unreasonably dangerous;

d.     Failing to adequately discipline officers involved in misconduct;

3

e.      Condoning and encouraging officers in the belief that they can violate the rights of persons such as the decedent in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits; and

f.      Failing to adequately train, supervise, and make employees aware of the dangers of the lethal combination of Taser shocks and shooting bullets;

11.     Decedent Jones is informed and believe, and on the basis of such information and belief allege, that the entity defendants' and their decision makers ordered, authorized, acquiesced in, tolerated, permitted or maintained custom and usage permitting the other defendants' herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs or usages set forth in the foregoing paragraph. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants' or on defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and rights of decedent Jones.

**B.      Allegations Regarding Decedent Jones Being Taser Shocked and Excessively Shot**

12.     Decedent Jones died of multiple gunshot wounds to his body on March 13, 2013. This action for wrongful death stems from the excessive and negligent use of force which claimed his life. A copy of the *Certificate of Death* for Wayne A. Jones, deceased, issued by the West Virginia Department of Health & Human Resources, Bureau for Public Health, is attached hereto and marked as Plaintiffs' Exhibit "B".

13.     This Complaint stems from the unlawful stop, detention and killing of decedent Jones. At the time of the incident, decedent Jones resided at 111 Kentucky Avenue, Martinsburg, Berkeley County, West Virginia.

14.     On the morning of March 13, 2013, officers of the MPD approached decedent Jones, on Queen Street, located in the downtown area of Martinsburg, with the intent to stop and detain him without legal cause or justification.

4

15.     Plaintiffs are informed and believe that among the officers of the MPD who approached decedent Jones was Does 1 to 25, and they wore police or tactical uniforms and had weaponry in the course of their approach, stop and detention of decedent Jones.

16.     Plaintiffs are informed and believe that officers of the MPD first contacted decedent Jones while he was walking on Queen Street.  At no point in the course of his unlawful detention did decedent Jones fail to comply with orders or commands of officers of the MPD, neither was decedent Jones disobedient or combative with officers, and officers of the MPD did not react toward him with a good faith concern.

17.     Plaintiffs are informed and believe that shortly after decedent Jones was stopped and detained by officers of the MPD, the officers, without legal cause or excuse, fired electric bards from their Tasers into his body and stunned him with electrical shocks, pointed their guns at him, screamed confusing and contradictory instructions and escalated the volatility in the situation they created.

18.     Plaintiffs are informed and believe that after the officer's taser decedent Jones, he bolted, ran and fell to the ground and was beaten by MPD officers.

19.     Plaintiffs are informed and believe that the MPD officers, without legal cause or excuse fired their guns into decedent Jones' body as he laid on the ground.  Upon information and belief, approximately 15 to 25 rounds struck decedent Jones in the face, head, rib areas, chest, and other unknown areas of his body causing fatal injuries.

20.     Plaintiffs are informed and believe that decedent Jones' body laid on the ground at the scene for approximately four (4) hours after being killed by the MPD before being removed to the morgue.

21.     Defendants contend that during a scuffle while decedent Jones was on the ground, decedent Jones pulled out a pocket knife and stabbed one of the officers in the torso.  Then, MPD

5

officers backed off and decedent Jones multiple times as he attempted to get to his feet. With proper training and protocol, MPD officers would have used reasonable tactics and restraining measures.

A copy of the *Press Release* issued by the MPD is attached hereto and marked as Plaintiffs' Exhibit "C".

22.     Plaintiffs are informed and believe that decedent Jones was shot and killed while lying on the ground.

23.     Decedent Jones had not committed any crime and did not present a threat of harm to defendants or to anyone else. MPD officers shot and killed decedent Jones in the absence of just cause or provocation, violating his constitutional and personal rights, and those of his family. Clearly, MPD officers used excessive and unreasonable force against decedent Jones in the absence of just cause or provocation violating his constitutional rights.

24.     The use of force by defendants was neither justified, lawful, nor reasonable under the circumstances in this case.

25.     The acts and omissions of each defendant were intentional, reckless, wanton and/or willful, conscience shocking, and deliberately represent an indifferent to decedent Jones' constitutional rights.

26.     Defendants City of Martinsburg and the MPD did not adequately or properly train, supervise, investigate, or even discipline MPD officers in response to their violation of decedent Jones's constitutional and personal rights. Indeed, defendants City of Martinsburg and MPD, ratified and adopted the conduct of Does 1 to 25, and subsequently placed the officers on paid administrative leave and provided them plush and suitable jobs working around the MPD, such as painting, maintenance work, and further provided Does 1 to 25 with additional training for other positions within the MPD while on administrative leave.

6

27.     Plaintiffs are informed and believe, and on that basis allege, that defendants City of Martinsburg and the MPD, failed to adequately train officers in defensive tactics, proper use of force, handling subjects in need of mental health assistance, and failed to supervise, investigate, and discipline police officers of the MPD for the violation of decedent Jones' constitutional and personal rights.

28.     Plaintiffs are informed and believe, and on that basis, allege that defendants the City of Martinsburg and MPD had actual and/or constructive knowledge that the failure to adequately train, supervise, and discipline police officers would cause violations of personal and constitutional rights.   The inadequate supervision, training, and discipline of MPD police officers regarding defensive tactics, the proper use of force, handling subjects in need of mental health assistance, demonstrates the existence of a criminal scheme, de facto custom or policy that tolerates and promotes the misconduct and violations of constitutional and personal rights, including the misconduct described in this Complaint.

29.     Defendants official policies or established customs inflicted a constitutional injury upon decedent Jones.

30.     Decedent Jones' death stemmed from defendant's City of Martinsburg and MPD's failure to train officers who might come into contact with individuals in mental health crisis or otherwise diminished mental capacity, and that the need for training to avoid mishandling of these types of situations has been obvious to the City of Martinsburg for years prior to this shooting, for example, to-wit:

a.      Subject:  Douglas Butler - Held a railroad spike in his hand and was shot by an officer of the MPD.

b.      Subject:   Jason Ross – Taser approximately 26 times by an officer of the MPD.

7

31.     Clearly, the failure of MPD officers on scene to follow instructions to de-escalate the situation and not use deadly force evidences a lack of adequate training.

32.     That other complaints have been filed against defendants' City of Martinsburg and the MPD officers for use of excessive force and for failure to respond appropriately to persons in mental health crisis.  Clearly, defendants Does 1 to 25 are "rogue" police officers and should be disciplined and closely monitored.  A copy of an article entitled, *"Coping with Police Misconduct in West Virginia: Citizen Involvement in Officer Disciplinary Procedures"* is attached hereto and marked as Plaintiffs' Exhibit "D".

33.     That MPD officers failed to follow an organized plan or response or to obey instructions regarding use of deadly force supports a failure to train theory.[1]

34.     Defendants omissions or failures to act amounted to the City of Martinsburg's and MPD's policy of "deliberate indifference" to the constitutional rights of decedent Jones.  And a pattern of similar violations in other instances in Martinsburg, Berkeley County, clearly demonstrate the City of Martinsburg's deliberate indifference to the constitutional rights of decedent Jones and inadequate training programs.[2]

35.     Defendant City of Martinsburg ratified the MPD's conduct on grounds that MPD routinely allowed its officers to use excessive and lethal force and did nothing to remedy the problem.[3]

36.     Defendant MPD ratified Does 1 to 25's conduct.

37.     Defendant MPD failed to coordinate its training and practices with mental health professional.

---

[1] *Connick v. Thompson*, 131 S. Ct. 1350 (2011) ; 1350, 1361 (*citing City of Canton*, 489 U.S. 378 at 390 n.10).
[2] *Schwartz v. Lassen County ex rel. Lassen County Jail (Det Facility)*, 838 F. Supp. 2d 1045, 1058 (E.D. Cal. 2012) (citing *Connick*, 131 S. Ct. at 1361).
[3] *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir.1999) (citing *City of Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

### C.      Allegations Regarding Decedent Jones' Mental State

38.      At the time he was stopped by the police, decedent Jones suffered from a mental illness.  Police officers across the country daily encounter the mentally ill, and since many years ago, these interactions have come to be an expected part of police work.  It is estimated that more than 45 million U.S. adults (nearly 20 percent of the population) have some type of mental illness.[4]  One in 17 Americans lives with a serious mental illness such as schizophrenia, major depression or bipolar disorder.[5]  Indeed, police departments nationwide estimate that an average of approximately seven percent of police calls involve mentally ill people.

39.      National guidelines have been developed to ensure the safety of both officers and citizens in these situations, including but not limited to Police Officer Training and Standards ("POST").  These guidelines have been in place for several years, are widely accepted and implemented, and are essential to the proper functioning of any professional police department.  The guidelines clearly mandate that the first principle of contacting a mentally ill person is to calm the situation.  An officer should move slowly by assuming a quiet and non-threatening manner when approaching the individual, and, if possible, avoid physical contact if no violence or destructive acts have taken place.  The fundamental goal of police interaction with the mentally ill is to diffuse the situation and safely facilitate medical care.  Proper training in accordance with these guidelines protects the safety of the public, minimizes the risk of harm to the responding officers, and ensures that the disturbed individual is managed in a humane manner.

40.      The MPD did the exact opposite when they approached, detained and killed decedent Jones, based on the strategy developed and initiated by defendant Does 1 to 25, in that the officers had at least five weapons raised and pointed at decedent when he was on the ground, including taser.

---

[4] National Survey on Drug Use and Health (NSDUH) Report, US Substance Abuse and Mental Health Services Admin. (Oct. 6, 2011).
[5] Prevalence of Serious Mental Illness Among US Adults," National Institute of Mental Health (2008).

MPD closed in on decedent Jones in a semi-circular fashion to the point where officers were only three to four feet from decedent Jones with guns raised and pointed directly at his body, thus resembling a close-range firing squad.  This behavior escalated the situation by surprising and threatening decedent Jones.  Moreover, decedent Jones was receiving loud instructions from multiple officers, in contradiction to the guidelines which call for a single well-trained officer to be the sole point of communication.

### D.    Allegations Regarding Damages.

41.    As a direct, legal and proximate result of the acts and omissions alleged herein, decedent Jones suffered humiliation and was killed, in violation of his constitutional rights.

42.    As a direct, legal and proximate result of the acts and omissions alleged herein, Plaintiffs have incurred funeral and burial expenses associated with the death of decedent Jones.

43.    As a direct, legal and proximate result of the acts and omissions alleged herein, plaintiffs seek all damages and remedies allowable pursuant to 42 USC §1983 and §1988, the decisional authority of federal civil rights law, and pursuant to applicable West Virginia state law.

44.    The police actions described in this Complaint were taken with reckless and callous disregard for the rights of decedent Jones, with willful oppression and malice, thereby supporting an award of punitive damages.

45.    Plaintiffs have engaged in counsel to vindicate the rights of decedent Jones.  They are therefore entitled to recover all attorneys fee's incurred, in connection with this action, pursuant to 42 USC §1988.

### E.    Allegations Regarding Exhaustion of Administrative Remedies

46.    Plaintiffs timely filed an administrative notice of claim with the Office of Attorney General of the State of West Virginia, the City of Martinsburg and the Martinsburg Police

Department, pursuant to West Virginia Code §55-17-3(a).  The claims have been ignored and believed denied.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. §1983 – Violation of Decedent Jones' Rights-Excessive Force
### (Against All Defendants and Does 1 through 25)

47.     Plaintiffs in their capacity as representatives to the Estate of decedent Jones, hereby incorporate the preceding paragraphs of this Complaint, to the extent relevant, as if fully set forth.

48.     Defendants Does 1 to 25 acted under color of law in detaining, taser, killing and using excessive force against decedent Jones, thereby depriving him of his constitutionally protected rights, including but not limited to, the rights guaranteed by the Fourth Amendment of the United States Constitution and Art. III § 3-6 e  of the West Virginia State Constitution.

49.     As a proximate and legal result of the conduct of the defendants, decedent suffered humiliation and was killed and incurred general damages for the deprivation of his constitutional rights.

50.     Defendants Does 1 to 25 acted in reckless and callous disregard for the constitutional rights of decedent Jones, and with willful oppression and malice.  Plaintiffs therefore seek an award of punitive damages against these defendants.

WHEREFORE, plaintiffs pray for relief as set forth below.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. §1983 - Violation of Decedent Jones' Rights – Danger Creation
### (Against Defendants Does 1 through 25)

51.     Plaintiffs in their capacity as representatives to the Estate of decedent Jones, hereby incorporate the preceding paragraphs of this Complaint, to the extent relevant, as if fully set forth.

52.     Defendants Does 1 to 25 acted under color of law in planning, coordinating, and implementing the police strategy for approaching and detaining decedent, with reckless or conscious

disregard for, and deliberate indifference to, the creation or increased risk of danger caused by that strategy, which failed to account for decedent's known mental health condition, thereby depriving decedent of his constitutionally-protected rights, including but not limited to, the rights guaranteed by the Fourteenth Amendment to the United States Constitution.

53.     As a proximate and legal result of the conduct of the defendants, decedent suffered humiliation and was killed and incurred general damages for the deprivation of his constitutional rights.  The injuries and damages suffered by decedent were a foreseeable result of the strategy planned, coordinated, and implemented by defendants.

54.     Defendants Does 1 to 25 acted in reckless and callous disregard for the constitutional rights of decedent, and with willful oppression and malice. Plaintiffs therefore seek an award of punitive damages against these defendants.

WHEREFORE, plaintiffs pray for relief as set forth below.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. §1983 - Violation of Decedent Jones' Family Rights
### (Against All Defendants)

55.     Plaintiffs in their capacity as personal representatives to the Estate of decedent Jones, hereby incorporate the preceding paragraphs of this Complaint, to the extent relevant, as if fully set forth.

56.     The detention, taser and killing of decedent Jones without lawful justification or provocation constituted an arbitrary abuse of police power under color of state law, committed with deliberate indifference to the rights of decedent Jones' family members. The conduct of Defendants Does 1 to 25 therefore violated the liberty interest of decedent's family members in their personal capacities, in maintaining their familial relationships with decedent Jones, which is an

12

interest protected by the Fourteenth Amendment to the United States Constitution, pursuant to West Virginia Code § 55-7-6(b).

57.    As a proximate, legal and direct result of these violations of decedent Jones' family members Fourteenth Amendment rights, they suffered the loss of the love, companionship, society, comfort, services, and moral and financial support of the decedent, and their sense of security, dignity, and pride as citizens of the United States of America.

58.    Defendants Does 1 to 25 acted in reckless and callous disregard for the constitutional rights of decedent Jones, and with willful oppression and malice. Plaintiffs, therefore seek an award of punitive damages against these defendants.

WHEREFORE, plaintiffs pray for relief as set forth below.

## FOURTH CLAIM FOR RELIEF
### 42 U.S.C. §1983
### (Against Defendants City of Martinsburg and Does 1 to 25)

59.    Plaintiffs in their capacity as representatives to the Estate of decedent Jones, hereby incorporate the preceding paragraphs of this Complaint, to the extent relevant, as if fully set forth.

60.    The policies, practices, acts and omissions of defendants City of Martinsburg and Does 1 to 25, the deliberate indifference of such defendants, and the adoption and ratification of the misconduct of MPD officers, as alleged herein, were moving and causative forces behind the violations of constitutional rights and the resulting damages suffered by decedent Jones.

61.    The MPD's policies of allowing its officers to use excessive and lethal force, and of not engaging mental health workers when responding to crisis situations possibly involving weapons, were moving and causative forces behind the violations of constitutional rights and the resulting damages suffered by decedent Jones.

62.     The misuse of lethal and excessive force described here also stemmed from a failure of the City of Martinsburg to properly train its officers and/or command staff, and the City of Martinsburg's deliberate indifference to these training needs. The City of Martinsburg knew or should have known that its officers would come into contact with individuals in mental health crisis or with otherwise diminished mental capacity, and that such situations require special training and tactics to be resolved safely with police intervention. The need for training to enable officers to avoid mishandling this type of situation has been patently obvious to the City of Martinsburg for years prior to this shooting, due to past incidents and the nationally recognized challenge these situations regularly pose to public safety officials. When public safety officials deal with individuals in mental health crises, they require specialized education and training. In the absence of such training, there is no way for officers to obtain the knowledge they require.

63.     The need for training, and the City's deliberate indifference by not providing appropriate training, is apparent even from the singular incident of the killing of decedent Jones.  The officers involved in this fatal encounter verbalized various scattered and conflicting ideas of how to handle this situation – from shooting and killing decedent Jones, to taking affirmative steps to engage and restrain him, to taking him into protective custody, to maintaining taser treatment.  With proper training, each of the officers would have been operating from a common understanding of best practice for this type of situation.

64.     In the midst of the encounter, no efforts were made to de-escalate the situation that the police already had allowed to get out of hand, while the officers drew their service revolvers and pointed guns at decedent Jones.  Had MPD officers been properly trained, they would have employed an organized and uniform approach to the situation, based on established evidence-based standards

14

rather than intuition and guesswork, with guidance from a mental health professional, and decedent's life would not have been taken.

65.     The MPD officer in charge of this encounter, was not properly trained. MPD officers had substantial time to plan whether and how to conduct this operation. Had MPD officers been properly trained, they would have known to consult a mental health expert to plan and conduct the engagement with decedent, if engagement was warranted at all, and they would have known that the top priority was to avoid any action that could escalate the situation. They also would have known to clearly instruct all officers on the scene not to have their guns drawn and pointed at decedent Jones while he was on the ground in full compliance with their commands.  Even affording officers the benefit of the doubt, decedent Jones only became agitated when he saw the massive show of armed force against him (including at least several taser applications to his body and MPD officer's guns were drawn).  With proper training, the officers would have had their firearms directed away from decedent Jones, and the situation likely would have been resolved without anyone being harmed.

66.     Though MPD officers purportedly were trained in responding to threats, this is notably distinguishable from responding to people in mental health crisis or otherwise with diminished mental capacity. Responding to a threat from a person with limited or no ability to think rationally calls for a different set of skills and tactics than when dealing with the general public. Additionally, MPD officers have as its primary duties community policing, gang intelligence, and "current major issues," which fail to include the specialized skill and training required for dealing with individuals with diminished mental capacity.

67.     The City of Martinsburg's policy and pattern of having its police officers resort to excessive force, and of failing to take appropriate measures when dealing with a person in mental

15

health crisis or otherwise with diminished mental capacity, and the City of Martinsburg's failure to train its officers in these regards, are evidenced as well by other incidents of excessive force and unreasonable responses to individuals in mental health crisis or otherwise with diminished mental capacity, and examples of these incidents include are numerous in the community.

68.     In light of this history, the City of Martinsburg's failure to provide appropriate training regarding excessive force, and dealing with individuals in mental health crisis or with diminished mental capacity, exhibits a deliberate indifference to the training needs of its officers and the constitutional rights of its citizens.

69.     Additionally, the officers' use of excessive and lethal force against decedent Jones without justification was ratified by the City of Martinsburg through its mishandling of the investigation, favorable administrative leave treatment of the MPD officers involved in the shooting supporting misconduct, and its failure to take any disciplinary action. The City of Martinsburg has not released critical evidence adduced during the investigation, which would have led the City of Martinsburg to take disciplinary action against the MPD officers involved.

70.     The Chief of the MPD, Kevin Miller, was aware of the officers' shootings and the investigation. He personally inspected the scene shortly after the killing. The City of Martinsburg's ultimate acceptance as "business as usual" of the MPD officers involved in the killing of decedent Jones was in contravention of the facts in this case. The acceptance was designed to protect the officers and the MPD, rather than to bring the truth to light so that such tragedies can be avoided in the future.

WHEREFORE, plaintiffs pray for relief as set forth below.

### FIFTH CLAIM FOR RELIEF
### Negligence and Wrongful Death
### (Against All Defendants)

71.     Plaintiffs in their capacity as representatives to the Estate of decedent Jones, hereby
incorporate the preceding paragraphs of this Complaint, to the extent relevant, as if fully set forth.

72.     On or about April 3, 2013, plaintiffs timely filed a notice of claim with the City of
Martinsburg, pursuant to West Virginia Code, § 55-17-3(a) *et seq*.  Those claims were denied by
operation of law.

73.     On March 13, 2013, defendants, and each of them, were negligent by virtue of
their acts and omissions alleged in this Complaint.  At all times, defendants owed decedent Jones  a
duty to act with due care to avoid unnecessary or unjustified harm. Police officers, including the
individual defendants herein, are charged with the duty of serving the public in a manner that
protects the safety and lives of citizens, and in a manner that diffuses rather than escalates
potentially violent situations.

74.     The City of Martinsburg also had a duty to hire, train, and supervise its employees so
as not to cause harm to decedent and to prevent the violation of constitutional and other legal rights.
As discussed above, such policies, procedures, and training guidelines are well-developed and
prevalent among professionally run police departments across the country.

75.     Defendants recklessly, carelessly and negligently breached their duty and caused
Decedent Jones' injury and death.   Defendants planned, coordinated, and implemented a police
strategy for approaching and detaining decedent Jones in a negligent manner that created or increased
the risk of danger caused by that strategy, which, in particular, failed to account for decedent Jones'
known mental health distress.  MPD officers used excessive and lethal force in response to behavior

by decedent Jones that was non-threatening, without risk of injury to himself or others, as described above.

76.     The City of Martinsburg also breached its duty to use reasonable care in the hiring, supervision, training, and/or retention of members of its police department, including Does 1 to 25, to avoid foreseeable injury and damages to members of the public such as decedent Jones, as outlined above with regard to the Fourth Claim for Relief.

77.     The wrongful acts described herein were foreseeable and were the legal and proximate cause of defendants' negligence in failing to exercise reasonable care to prevent injuries and death to innocent citizens.

78.     As an actual and proximate result of defendants' wrongful conduct against Decedent Jones, plaintiffs have sustained pecuniary loss resulting from the loss of comfort, society, attention, services, and support of decedent, as well as funeral and burial expenses, all in an amount according to proof at trial, pursuant to West Virginia Code § 55-7-6(c).

79.     The acts and/or omissions of the individual defendants as alleged herein occurred in the course and scope of their employment with the City of Martinsburg, and the City of Martinsburg is liable for its employees' acts and/or omissions, pursuant to West Virginia law under the doctrine of *respondeat superior*.

80.     As a direct and legal consequence of the negligence of defendants, decedent Jones sustained fatal injuries.

81.     As a direct and legal consequence of the negligence of defendants, decedent Jones sustained damages set forth herein.

WHEREFORE, plaintiffs pray for relief as set forth below.

18

## SIXTH CLAIM FOR RELIEF
### (West Virginia Code §61-6-21(b))

82.     Plaintiffs in their capacity as representatives to the Estate of decedent Jones, hereby incorporate the preceding paragraphs of this Complaint, to the extent relevant, as if fully set forth.

83.     The United States Constitution, Amendment IV, and the West Virginia Constitution, Art. III § 3-6 guarantees the right of persons to be free from excessive force.  Both Constitutions guarantee the right to appropriate medical attention for people in police custody.  Defendants', by engaging in the wrongful conduct alleged herein, denied these rights to Decedent Jones, thus giving rise to claims for damages, pursuant to West Virginia Code §61-6-21(b).

84.     As a direct and proximate cause of the aforementioned acts of defendants', Decedent Jones was injured as set forth above, and is entitled to statutory damages under applicable West Virginia law, as compensatory and punitive damages according to proof.

85.     In doing the foregoing wrongful acts, defendants', and each of them, acted in reckless and callous disregard for the constitutional rights of Decedent Jones.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the aware of punitive damages against each individual defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

WHEREFORE, plaintiffs pray for relief as set forth below.

### PRAYER

Plaintiffs pray, on behalf of decedent Jones, for judgment as follows:

*On All Causes of Action*

(a)     Compensatory general damages in the amount of One Hundred Million Dollars ($100,000,000.00), and special damages in accordance with proof;

19

*On the First, Second, Third, Fourth, Fifth and Sixth Causes of Action*

(b)     For attorney's fees, pursuant to 42 U.S.C. §1988, and West Virginia Code §61-6-21(b);

*On the First, Second, Third, Fourth, Fifth and Sixth Causes of Action*

(c)     For Exemplary damages against all defendants.

(d)     For punitive damages against all defendants, pursuant to 42 U.S.C. §1983; and West Virginia Code §61-6-21(b), in the amount of One Hundred Million Dollars ($100,000,000.00);

(e)     For cost of suite necessarily incurred herein;

(f)     For funeral and burial expenses according to proof; and

(g)     Enjoining and restraining all Defendants and their officers, agents, servants and employees, and those in active concert or participation with them, from continuing to engage in or engaging in unlawful and unconstitutional actions, policies, practices, and customs or usages set forth in the  foregoing paragraphs as patterns of constitutional violations based either on a deliberate plan by defendants' or on defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and rights of decedent Jones.

(h)     For declaratory judgment against all Defendants.

(i)     For such further relief as the Court deems just or proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury, pursuant to Fed.  R. Civ. P. 38(b), and the West Virginia Constitution, Article III, § 3-13.

**ESTATE OF WAYNE A. JONES,**
**BY ROBERT L. JONES AND BRUCE A. JONES,**
**ADMINISTRATORS OF THE**
**ESTATE OF WAYNE A. JONES, Plaintiffs**
**By Counsel**


"s/" Sherman L. Lambert, Sr., Esquire
Sherman L. Lambert, Sr., Esquire
SHERMAN L. LAMBERT, SR., P.L.L.C.
WVSB No.: 2129
P.O. Box 3200
Shepherdstown, WV 25443
(304) 263-3548
sherman@shermanlambertlaw.com

21