IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
(Martinsburg Division)

ESTATE OF WAYNE A. JONES,
BY ROBERT L. JONES AND BRUCE A. JONES,
ADMINISTRATORS OF THE
ESTATE OF WAYNE A. JONES,

        Plaintiffs,

v.

                                       Docket No.: 3:13-cv-68
                                       (Judge Gina M. Groh)

THE CITY OF MARTINSBURG, WEST VIRGINIA,
PFC. ERIK HERB,
PFC. DANIEL NORTH,
PTLM. WILLIAM STAUBS,
PTLM. PAUL LEHMAN, AND
PFC. ERIC NEELY,

        Defendants.

### RESPONSE IN OPPOSITION TO MOTION TO STRIKE
### ATTORNEY LAMBERT'S CHARGING LIEN

COMES NOW, Sherman L. Lambert, Sr., Esquire (hereinafter referred to as "Attorney Lambert") and oppose the Motion to Strike the Charging Lien of Attorney Lambert, duly filed by Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, Substitute legal counsel for the Estate of Wayne A. Jones.

The Motion to Strike Charging Lien of Attorney Lambert (Doc. #278) is hopelessly and defective because it does not comply with the mandatory requirements of LR Civ P 7.02, on grounds that the motion is not supported by a *memorandum of law,* nor is the motion accompanied by required sworn affidavits of Robert L. Jones and Bruce A. Jones (hereinafter referred to as "the Co-Administrators'").

1

The motion prepared by Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, is a fraud upon the court because they intentionally omitted crucial facts in the case and misled and lied to the Court about other material issues. [1]

Upon review of Attorney Lambert's Exhibits attached to this Opposition to Motion to Strike Charging Lien, the question is, "Why didn't Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, provide these Exhibits to the Court?" The answer is the Exhibits clearly changes the false narrative in which they intentionally manufactured and presented to this Court. This solves the mystery why the Motion to Strike Charging Lien is unsupported by affidavits or a verification.

Your Honor, after you review Attorney Lambert's *Exhibits* contained in this Opposition to the Motion to Strike Charging Lien, the only conclusions to be made are as follows, to-wit:

---

[1] Rule 11- Federal Rules of Civil Procedure

REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(1) That Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, prepared the Motion to Strike Charging Lien without talking with Robert L. Jones and Bruce A. Jones;

(2) That Robert L. Jones and Bruce A. Jones, deliberately misled and lied to this Court regarding the factual allegations contained in the Motion to Strike Charging Lien;

(3) That each and every *Exhibit* offered by Attorney Lambert is a forged document; or

(4) That greed played a vital role in this case, which caused Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, to lose sight of the oath taken by Lawyers and clearly violated the Lawyers Rules of Professional Responsibility.

This is a truly a sad day because I have other information, which is outside the scope of the Motion to Strike Attorney Lambert's Charging Lien, but relevant to the integrity of the legal process and character of Christopher E. Brown, Esquire, Paul G. Taylor, Esquire, Robert L. Jones and Bruce A. Jones.

This type of conduct should never happen again to a colleague who did more for Wayne A Jones, deceased, in death, than his brothers did for him in life.

## **HISTORICAL FACTS**

1. On March 18, 2013, the Co-Administrators' executed a written contingency Fee Agreement ("hereinafter referred to as "the Agreement") with Sherman L. Lambert, Sr., Esquire and SHERMAN L. LAMBERT, SR., P.L.L.C. A copy of the Agreement is enclosed herewith and marked as *Exhibit "A"*.

The respective signatures of the Co-Administrators' and terms and conditions provided in the written Agreement are self-explanatory and are not in dispute. So, the only question is whether Attorney Lambert is entitled to attorney fees under the terms and conditions of the Agreement, based upon established case law in the State of West Virginia.

3

I escorted the Co-Administrators' to the Berkeley County Fiduciary's Office and qualified them to serve as Co-Administrators' of the Estate of Wayne A. Jones. The same day, I directed them to Smith Nandenbousch Insurance Company, located at 132 South Queen Street, Martinsburg, West Virginia, to secure a bond for the faithful performance of their service. The Co-Administrators' did not have any money to pay respective fees, so I paid for the fees.

From the very beginning of the creation of the attorney-client relationship between Attorney Lambert and the Co-Administrators', it became apparent that they were not truthful in disclosing crucial facts during the initial consultation. As the case progressed, it became obvious that Co-Administrator, Robert L. Jones, held extremist views of hatred towards all Caucasian people, in addition to the fact that I spent an enormous amount of time resolving disputes between Robert and Bruce.

Attorney Lambert would not allow Co-Administrator Robert L. Jones to spew his racist comments in his presence and corrected him repeatedly, which caused him to gradually withdraw from participating in the first mediation proceedings, *inter alia*.

On June 13, 2013, I filed a civil action in the clerk's office of the United States District Court for the Northern District of West Virginia, on behalf of the Estate of Wayne A. Jones. A copy of original and amended complaints are found in the clerk's office for your review and perusal.

During discovery proceedings, I learned that the Co-Administrators' withheld vital evidence regarding the decedent's propensity for violence. Clearly, it was extremely important for legal counsel to know that the Decedent and Co-Administrator, Robert L. Jones, both, were charged with the capital offense of "murder" prior to this case. However, I was surprised by this

4

disclosure during discovery proceedings and the Co-Administrators stated it was not relevant to this case.

Police records clearly revealed the use of a knife was involved in the Stamford, Connecticut, murder case, which formed the basis for the use of deadly force with a knife by the Martinsburg Police Department. A copy of the City of Martinsburg's Records request is enclosed herewith and marked as *Exhibit "B"*.

ISSUES PRESENTED IN MOTION TO STRIKE

**1. The evidence will show that Lambert misled the co-admins, stating the case was dismissed given Wayne Jones' background and other blatantly false reasons (clearly avoiding the real reason the case was dismissed - *the admitted facts*).**

*Response:*

There were no affidavits or other supporting documents, i.e., emails, text messages or demonstrative evidence to support this notion. This is a court of law, and clearly Christopher E. Brown, Esquire, Paul G. Taylor, Esquire, and the Co-Administrators have not met their burden on this allegation.

However, attached hereto you will find an email (*Exhibit "C"*), dated February 20, 2014, which clearly indicates that the Co-Administrators' were aware of the admissions issue. The email discusses the fact that Attorney Lambert's duly filed Motion in Opposition to Defendants' Motion to Deem Requests Admitted, *inter alia*.

Prior to going to the scheduled evidentiary hearing before United States Magistrate Judge Seibert, located in Wheeling, West Virginia, on February 18, 2014, Attorney Lambert spoke with Co-Administrator Bruce Jones, on February 17, 2014, after the hearing, regarding the admissions issues.

5

For the record, please find two (2) respective Orders regarding the admissions issue, to-wit:

Order Denying Motion to Deem Request Admitted – Entered on February 25, 2014. (*Exhibit "D"*)

Order Granting Motion to Deem Request Admitted – Entered on April 16, 2014. (*Exhibit "E"*)

## NAACP

From the very beginning, the Co-Administrators' requested the assistance of the National Association for the Advancement of Colored People (hereinafter referred to as "NAACP").

Based upon that request, Attorney Lambert contacted George Rutherford (hereinafter referred to as "Mr. Rutherford"), President of the Jefferson County Chapter of the NAACP and James Tolbert, deceased (hereinafter referred to as "Mr. Tolbert"), Former President of the West Virginia State Chapter of the NAACP.

The Co-Administrators' asked Attorney Lambert to invite Messrs. Rutherford and Tolbert into the case to provide community support for their plight.  Both men agreed to do so.

On April 18, 2014, Attorney Lambert with the Co-Administrators, and Messrs. Tolbert and Rutherford met in my office and discussed Judge Seibert's Order Granting the City of Martinsburg's Motion to Deem Requests Admitted.

Attached hereto please find an affidavit of Mr. George Rutherford ((*Exhibit "F"*).

Clearly, the Order Granting the Motion to Deem Requests Admitted did not "prejudice" or "harm" the Estate in any way.  Such statement would be a premature argument because the matter did not go before a jury and the case was settled out-of-court.

6

More importantly, there was no truth in the allegations asserted in the Motion to Strike the Charging Lien of Attorney Lambert that the settlement was "prejudiced" or "harmed" by the Order Granting the Motion to Deem the Requests Admitted.

Clearly, Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, did not argue or remotely suggest that the Order Granting the Motion to Deem the Requests Admitted prevented the Estate from obtaining 3.5 Million Dollars. The fact of the matter is that Attorney Lambert filed the lawsuit and litigated the matter into mediation at the United States Court of Appeals for the Fourth Circuit. Clearly, Attorney Lambert could have obtain the very same verdict or more if the Co-Administrators' had not thwarted mediation efforts. But for Attorney Lambert, there would been no settlement.

**2.  Lambert, for the Jones Estate, filed a Notice of Appeal to the Fourth Circuit on October 21, 2014 (Ex B-Dkt#163). Therein, Lambert requested to be withdrawn as counsel (See Ex B-Dkt#168, entered November 12, 2014, granting request to withdraw submitted within the Notice of Appeal, Dkt#163). The co-admins of the estate were at this time both confused and upset with Lambert for his failures (of which they were not fully aware until later) and for abandoning them (withdrawing) at this crucial time.**

*Response:*

Again, the Co-Administrators' lied to this Court.

On October 21, 2014 Attorney Lambert filed a Notice of Appeal in the United States District Court of Appeals for the Northern District of West Virginia. (***Exhibit "G"***).

On October 21, 2014, Attorney Lambert duly filed a Notice of Appeal in U.S. District Court of Appeals for the Fourth Circuit. (***Exhibit "G"***).

On October 29, 2014, Attorney Lambert duly filed a Docketing Statement in U.S. District Court for the Fourth Circuit. (*Exhibit "H"*).

The case is now in the U.S. District Court for the Fourth Circuit, and On November 7, 2014, Attorney Lambert contacted Co-Administrator Bruce A. Jones to advised that a mediation form needed his signature.

On November 8, 2014, Attorney Lambert drove to the address provided by Bruce Jones. Upon arrival, he was not at that address.  A male occupant of the house (Va. License Plate No.: JKE8638) took Attorney Lambert to the residence where Bruce Jones was located. *(Exhibit "I")*

Co-Administrator Bruce A. Jones refused to sign the required documentation to participate in the mediation process.

Attorney Lambert attempted to contact Co-Administrator Robert L. Jones, by telephone and email. (*Exhibit "J"*).  However, he received no response to the email.

Again, the Co-Administrators' lied to this Court.

**3.  The Jones Estate missed an opportunity to mediate the case following the first dismissal. Following the notice of appeal to the Fourth Circuit, it is customary to mediate with a Fourth Circuit mediator. However, Lambert sent a notice of cancellation to the co-admins of the Jones Estate the day the order was entered withdrawing him from the case (Ex C). That was the first the co-admins heard anything about mediation. At that time the co-admins were distraught both with the result (dismissal of the case) and with Lambert's indication he would withdraw from the case, leaving them without counsel.**

*Response:*

Oddly, Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, submitted one (1) individual page of two (2) separate documents.   The first document is page two of a seven (7)

page document, dated, November 8, 2014; and the second document is the cover page of a separate document, dated November 12, 2014. *(Exhibit "K")*.

However, the attorneys' intentionally withheld from the Court, Attorney Lambert's complete seven (7) page document, dated November 8, 2014, with all the enclosures.  After you review the seven (7) page letter, with enclosures, you will clearly understand why the attorneys' withheld these additional documents because if these documents were disclosed, the attorneys' would not be able to argue Attorney Lambert failed to disclose information regarding the mediation process.  This is reprehensible conduct. *(Exhibit "L")*.

The November 8, 2014 document, with enclosures, clearly explained to the Co-Administrators' the mediation process.  In addition, the letter provided information from Donna S. Hart, Senior Resident Circuit Mediator, who scheduled the mediation for **November 12, 2014 at 3:00 'clock, p.m.,** *inter alia.*

Again, the Co-Administrators' lied to this Court.

On November 8, 2014, after meeting with Co-Administrator, Bruce Jones, in Winchester, Virginia, he refused to sign the form for mediation proceedings, which caused cancellation of the mediation process scheduled for November 12, 2014 at 3:oo )'clock, p.m.

More telling, on November 9, 2014, I received an email from Co-Administrator, Robert L. Jones, who clearly admits that he would <u>not</u> agree or sign the necessary documentation to participate in the mediation process in the United States Court of Appeals for the Fourth Circuit because he wanted insurance limits policy or go to trial.*(Exhibit "M")*.

The fact of the matter is that the Jones' had every opportunity to mediate in the United States District Court for the Fourth Circuit.

9

Then, on November 9, 2014, Attorney Lambert was terminated by Co-Administrator Bruce A. Jones. He was advised that the Estate had retained an attorney named Bradley G. Pollack (hereinafter referred to as "Attorney Pollack"). (***Exhibit "N"***)

On November 10, 2014, Attorney Lambert received an email from Rand Cadmus, who claimed to be a paralegal hired by Bruce Jones, to work on the case. (***Exhibit "O"***)

It is clear that the Co-Administrators' were never legally exposed or left without benefit of legal counsel.

On November 10, 2014, Attorney Lambert filed a Motion to Withdraw his Appearance in the U.S. District Court of Appeals for the Fourth Circuit. (***Exhibit "P"***)

On November 12, 2014, due to Co-Administrators' refusal to attend the mediation process, Donna Hart, Senior Resident Circuit Mediator, terminated mediation proceedings. (***Exhibit "Q"***)

So, it is clear that the alleged "distraught" and alleged "prejudice financially" resulted from the Co-Administrators' actions and was not associated with any conduct of Attorney Lambert.

On January 7, 2015 the U.S. Court of Appeals for the Fourth Circuit, entered an Order granting Attorney Lambert's Motion to Withdraw from further representation on behalf of the Estate. (***Exhibit "R"***)

Clearly, Attorney Lambert did not abandon the Estate as alleged in the Motion.

Again, the Co-Administrators' were lying about this issue.

**4.   Attorney Rocco Deleonardis entered his appearance on the eve of the deadline to file the Opening Brief for the first appeal, and continued, to work with Sapp, Cadmus and Feldbush until the undersigned entered his appearance prior to the Reply Brief deadline**

for the first appeal. As this Court is aware, the beneficiaries have agreed to those costs
(with the exception of Marsha Maines) as they credit those persons for doing the work
necessary to ensure the appeal was not lost before it started.

*Response:*

Your Honor, Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, withheld
information regarding the presence of another attorney between Attorney Lambert and Attorney
Rocco Deleonardis (hereinafter referred to as "Attorney Rocco"). His name is Attorney Pollack.
*(previously identified as Exhibit "L")*

If Attorney Rocco entered his appearance on the eve of eve of the deadline to
file the Opening Brief for the first appeal, that would be attributable to the conduct of the Co-
Administrators' who hired Attorney Pollack or Attorney.

Again, the Co-Administrators' were failed to disclose the evidence of another attorney.

Again, the Co-Administrators' withheld crucial information for the Court.

**5.   Attorney Lambert filed a "Notice of Charging Lien" with this Court on October
14, 2016 (Ex D). Curiously, the document is witnessed and notarized, under oath, the
following day, October 15, 2016.**

*Response:*

There is no legal requirement that a charging lien has to be notarized. However, the
document was officially certified and notarized on the date filed, as evidenced by clerk's office
receipt.

**6.   The statement of services reveals numerous entries that are improper: - For the
initial meeting that resulted in the signing of the retainer -3/18/2013.**

*Response:*

Attorney Lambert did not charge Co-Administrators' for the initial telephone consultation.

Review the email, dated Sunday, March 17, 2013 from Co-Administrator Bruce Jones. The client was not billed for this telephone conference as alleged in the Motion. (*Exhibit "S"*)

Again, the Co-Administrators' were lying about this issue.

**7.   Lambert is billing the Jones Estate for his free advertising-his interviews with media, which Plaintiff submits is not proper (see entries for 3/20/13; 3/27/2013; 4/25/2013; 6/14/13; 8/28/13; 10/16/13; 4/16/14; 5/16/14: 5/17/14; 5/27/14; 6/14/14; 8/28/14; 10/8/14).**

*Response:*

Any and all media news interviews were client driven and approved.  In fact, the Co-Administrators' were present at the majority interviews. Kindly review text messages and photographs of media coverage events. (*Exhibit "T"*)

Again, the Co-Administrators' were lying about this issue.

**8.   Corporate disclosure Complaint, 3.30 hours (??)**

*Response:*

Kindly review Doc#86 and Doc#87.  (5/22/14 – Two entries were made)

**9.   These alleged binders identified in the 9/1614 and 9/17/14 entry were not turned over / provided to the Jones brothers.  The Jones Estate does not challenge these costs; the Distribution Agreement reflects the beneficiaries have agreed to pay these costs from the proceeds of the settlement.**

*Response:*

This is another false statement.  All documents were provided to the Co-Administrators.

12

According to Attorney Lambert's Billing Statement, on 9/16/2014, the Co-Administrators were given a copy of Notebook; on 9/17/ 2014 - Notebooks were created and delivered to Judge Groh's Office and a copy of same was delivered to legal counsel for the City of Martinsburg.

Again, the Co-Administrators' were lying about this issue.

**10. The items identified in the 9/20/.14 entry were never provided to the Jones brothers.**

*Response:*

These items were provided to the Co-Administrators'.

**11. Lambert's Statement of Services includes an entry evidencing the date he received the Defendants' Requests for Admissions (Ex E-entry for 12/23/13, claimed hours). There are no entries for work performed on responding to discovery between 12/23/13 and 1/27/14.**

Clearly, the Certificate of Service, dated December 23, 2013, was duly filed in the clerk's office of the United States District Court for the Northern District of West Virginia, by the City of Martinsburg. However, the propounded discovery associated with the Certificate was not received, on December 23, 2013. Kindly review (***Exhibit "U"***)

**12. Lambert owed a duty to the Plaintiff, and had he satisfied that duty not only would Plaintiff have likely avoided the dismissal of its suit three times (arguably the qualified immunity appeal would have taken place regardless), this matter would not have taken six (6) years to resolve, this Court likely would not have granted summary judgment in the absence of the very damaging admitted facts (that Jones had a knife, attempted to stab an officer, and refused commands to drop the knife) and Plaintiff would not be facing the additional attorney's fees resulting from the several appeals.**

13

*Response:*

Based upon the evidenced adduced in Attorney Lambert's Exhibits, it clearly shows that the Co-Administrators are totally responsible for this matter taking six (6) years to resolve and not Attorney Lambert.

The Court dismissed the lawsuit on grounds of qualified immunity. The issue regarding the Order Granting the Motion to Deem Requests Admitted did not "prejudice" or "harm" the Estate in any way because the case did not go before a jury, the knife was not admitted into evidence at trial, and the case was settled out-of-court. The admission of the knife did not prevent the case being settled for 3.5 Million Dollars. You can't have it both ways. The settlement resolves the admissions issue and the only reason why the attorneys are raising this irrelevant issue at the pre-disbursement phase of these proceedings is because they don't want to pay Attorney Lambert for his legal services.

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
(Martinsburg Division)

ESTATE OF WAYNE A. JONES,
BY ROBERT L. JONES AND BRUCE A. JONES,
ADMINISTRATORS OF THE
ESTATE OF WAYNE A. JONES,

        Plaintiffs,

v.

                                         Docket No.: 3:13-cv-68
                                         (Judge Gina M. Groh)

THE CITY OF MARTINSBURG, WEST VIRGINIA,
PFC. ERIK HERB,
PFC. DANIEL NORTH,
PTLM. WILLIAM STAUBS,
PTLM. PAUL LEHMAN, AND
PFC. ERIC NEELY,

        Defendants.

**CERTIFICATE OF SERVICE**,

15

I, Sherman L. Lambert, Sr., Esquire, hereby certify that I served a true copy of the attached **MOTION TO DISMISS MOTION TO STRIKE CHARGING LIEN OF ATTORNEY LAMBERRT** and **CERTIFICATE OF SERVICE**, by electronic filing with the Clerk of the Court using the CM/ECF system, on this 4th day of September 2020, and sent to the following persons:

Christopher Brown, Esquire
526 King Street, Suite 213
Alexandria, VA 22314


and


Paul Taylor, Esquire
134 W. Burke Street
Martinsburg, WV 25401


By: "s/" Sherman L. Lambert, Sr., Esquire
Sherman L. Lambert, Sr., Esquire
SHERMAN L. LAMBERT, SR., P.L.L.C.
WVSB No.: 2129
P.O. Box 3200
Shepherdstown, WV 25443
(304) 263-3548
sherman@shermanlambertlaw.com

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
(Martinsburg Division)

ESTATE OF WAYNE A. JONES,
BY ROBERT L. JONES AND BRUCE A. JONES,
ADMINISTRATORS OF THE
ESTATE OF WAYNE A. JONES,

      Plaintiffs,

v.                                    Docket No.: 3:13-cv-68
                                       (Judge Gina M. Groh)

THE CITY OF MARTINSBURG, WEST VIRGINIA,
PFC. ERIK HERB,
PFC. DANIEL NORTH,
PTLM. WILLIAM STAUBS,
PTLM. PAUL LEHMAN, AND
PFC. ERIC NEELY,

      Defendants.

**<u>CERTIFICATE OF SERVICE</u>,**

17

I, Sherman L. Lambert, Sr., Esquire, hereby certify that I served a true copy of the attached **MOTION TO DISMISS MOTION TO STRIKE CHARGING LIEN OF ATTORNEY LAMBERRT** and **CERTIFICATE OF SERVICE**, by electronic filing with the Clerk of the Court using the CM/ECF system, on this 4th day of September 2020, and sent to the following persons:

Christopher Brown, Esquire
526 King Street, Suite 213
Alexandria, VA 22314


and


Paul Taylor, Esquire
134 W. Burke Street
Martinsburg, WV 25401


By: "s/" Sherman L. Lambert, Sr., Esquire
Sherman L. Lambert, Sr., Esquire
SHERMAN L. LAMBERT, SR., P.L.L.C.
WVSB No.: 2129
P.O. Box 3200
Shepherdstown, WV 25443
(304) 263-3548
sherman@shermanlambertlaw.com

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
(Martinsburg Division)

ESTATE OF WAYNE A. JONES,
BY ROBERT L. JONES AND BRUCE A. JONES,
ADMINISTRATORS OF THE
ESTATE OF WAYNE A. JONES,

                Plaintiffs,

v.
                                            Docket No.: 3:13-cv-68
                                            (Judge Gina M. Groh)

THE CITY OF MARTINSBURG, WEST VIRGINIA,
PFC. ERIK HERB,
PFC. DANIEL NORTH,
PTLM. WILLIAM STAUBS,
PTLM. PAUL LEHMAN, AND
PFC. ERIC NEELY,

                Defendants.

## RESPONSE IN OPPOSITION TO MOTION TO STRIKE
## ATTORNEY LAMBERT'S CHARGING LIEN

COMES NOW, Sherman L. Lambert, Sr., Esquire (hereinafter referred to as "Attorney

Lambert") and oppose the Motion to Strike the Charging Lien of Attorney Lambert, duly filed

by Paul G. Taylor, Esquire and Christopher E. Brown, Esquire, Substitute legal counsel for the

Estate of Wayne A. Jones.

The Motion to Strike Charging Lien of Attorney Lambert (Doc. #278) is hopelessly and

defective because it does not comply with the mandatory requirements of LR Civ P 7.02, on

grounds that the motion is not supported by a *memorandum of law,* nor is the motion

accompanied by required sworn affidavits of Robert L. Jones and Bruce A. Jones (hereinafter

referred to as "the Co-Administrators'").

1

The motion prepared by Paul G. Taylor, Esquire and Christopher E. Brown, Esquire, is a fraud upon the court because they intentionally omitted crucial facts, manipulated documents, misrepresented facts, and lied to the Court about material issues. [1]

Upon review of Attorney Lambert's *Exhibits* attached to this Opposition to Motion to Strike Charging Lien, the question is, "Why didn't Paul G. Taylor, Esquire and Christopher E. Brown, Esquire, provide these Exhibits to the Court?" The answer to the question is because Attorney Lambert's Exhibits clearly changes the false narrative they manufactured and presented to this Court. Clearly, this explains why two seasons attorneys filed the Motion to Strike Charging Lien without supporting by affidavits or verification.

Your Honor, after you review Attorney Lambert's *Exhibits* attached to his Opposition to the Motion to Strike Charging Lien, the only conclusions to be made are as follows, to-wit:

(1) That Paul G. Taylor, Esquire and Christopher E. Brown, Esquire, prepared the Motion to Strike Charging Lien without talking with Robert L. Jones and Bruce A. Jones;

(2) That Robert L. Jones and Bruce A. Jones, deliberately mispresented material facts to this Court regarding the factual allegations contained in the Motion to Strike Charging Lien;

---

[1] Rule 11- Federal Rules of Civil Procedure

REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(3) That each and every *Exhibit* offered by Attorney Lambert are "forged" documents; or

(4) That greed played a vital role in this case, which caused Paul G. Taylor, Esquire and Christopher E. Brown, Esquire, to lose sight of the oath taken by Lawyers and risked their respective legal careers by and intentionally violating multiple codes of the Lawyers Rules of Professional Responsibility.

Prior to filing the Motion to Strike Attorney Lambert's Charging Lien, one of the Co-Administrators' attorneys' called Attorney Lambert and asked him to reduce the amount of the lien. Attorney Lambert refused to entertain that discussion.

This is a truly a sad day. However, the integrity of our legal process is at issue, not to mention the character appraisals of Paul G. Taylor, Esquire, Christopher E. Brown, Esquire, Co-Administrators, Robert L. Jones and Bruce A. Jones.

## **HISTORICAL FACTS**

1. On March 18, 2013, the Co-Administrators' executed a written contingency Fee Agreement ("hereinafter referred to as "the Agreement") with Sherman L. Lambert, Sr., Esquire and SHERMAN L. LAMBERT, SR., P.L.L.C. A copy of the Agreement is enclosed herewith and marked as *Exhibit "A"*.

The respective signatures of the Co-Administrators' and terms and conditions provided in the written Agreement are self-explanatory and are not in dispute by the parties.

The only question is whether Attorney Lambert is entitled to attorneys' fees under the terms and conditions of the Agreement, or by quantum meruit, for the reasonable value of his services, based upon established case law in the State of West Virginia.

After entering into contractual relations with the Co-Administrators, I escorted them to the Berkeley County Fiduciary's Office and had them qualified to serve as Co-Administrators' of

3

the Estate of Wayne A. Jones. That same day, I escorted them to Smith Nandenbousch Insurance Company, located at 132 South Queen Street, Martinsburg, West Virginia, to secure a bond for the faithful performance of their service.

The Co-Administrators' did not have any money to pay any fees, so I paid for the fees.

From the very beginning of the creation of the attorney-client relationship between Attorney Lambert and the Co-Administrators', it became apparent that they were not financially solvent or truthful in disclosing crucial facts during the initial consultation.

As the case progressed, it became obvious that Co-Administrator, Robert L. Jones, held extremist views of hatred towards all Caucasian people, in addition to the fact that I spent an enormous amount of time resolving disputes between Robert and Bruce.

However, Attorney Lambert would not allow Co-Administrator Robert L. Jones to spew his racist comments in his presence and corrected him repeatedly, which caused him to gradually withdraw from participating in the first mediation proceedings, *inter alia*.

On June 13, 2013, I filed a civil action in the clerk's office of the United States District Court for the Northern District of West Virginia, on behalf of the Estate of Wayne A. Jones. A copy of original complaint (Doc#1) and amended complaint (Doc#85) are found in the clerk's office for your review.

During discovery proceedings, I learned that the Co-Administrators' withheld vital evidence regarding the decedent's propensity for violence. Clearly, it was extremely important for legal counsel to know that the Decedent and Co-Administrator, Robert L. Jones, both, were charged with the capital offense of "murder" prior to this case. I was surprised by this discovery but the Co-Administrators stated it was not relevant to this case.

4

Clearly, police records revealed the use of a knife was involved in the Stamford,

Connecticut, murder case, which formed the basis for the use of deadly force with a knife by the

Martinsburg Police Department.   A copy of the City of Martinsburg's Records request is

enclosed herewith and marked as *Exhibit "B"*.

THE ISSUES PRESENTED IN MOTION TO STRIKE
ATTORNEY LAMBERT'S CHARGING LIEN

**1.   The evidence will show that Lambert misled the co-admins, stating the case was**

**dismissed given Wayne Jones' background and other blatantly false reasons (clearly**

**avoiding the real reason the case was dismissed - *the admitted facts*).**

*Response:*

There were no affidavits or other supporting documents, i.e., emails, text messages or

demonstrative evidence filed by Paul G. Taylor, Esquire and Christopher E. Brown, Esquire,

to support this allegation. This is a court of law, and clearly the attorneys' have not met their

burden regarding this unsupported allegation.

However, attached hereto you will find an email (*Exhibit "C"*), dated February 20, 2014,

which clearly indicates that the Co-Administrators' were aware of the admissions issue.  The

email discusses the fact that Attorney Lambert's duly filed Motion in Opposition to Defendants'

Motion to Deem Requests Admitted, *inter alia.*

Attorney Lambert, by telephone, spoke with Co-Administrator Bruce Jones, on February

17, 2014, prior to attending the hearing regarding the admissions issues.

On February 18, 2014, Attorney Lambert attended the duly scheduled evidentiary hearing

before United States Magistrate Judge Seibert, located in Wheeling, West Virginia.

For the record, please find two (2) respective Orders regarding the admissions issue, to-

wit:

5

Order Denying Motion to Deem Request Admitted – Entered on February 25, 2014.

(*Exhibit "D"*)

Order Granting Motion to Deem Request Admitted – Entered on April 16, 2014.

(*Exhibit "E"*)

## NAACP INVOLVEMENT IN THE CASE

From the very beginning, the Co-Administrators' requested the assistance of the National Association for the Advancement of Colored People (hereinafter referred to as "NAACP").

Based upon that request, Attorney Lambert contacted George Rutherford (hereinafter referred to as "Mr. Rutherford"), President of the Jefferson County Chapter of the NAACP and James Tolbert, deceased (hereinafter referred to as "Mr. Tolbert"), Former President of the West Virginia State Chapter of the NAACP.

The Co-Administrators' asked Attorney Lambert to invite Messrs. Rutherford and Tolbert into the case to provide community support.  Both men agreed to do so.

On April 18, 2014, Attorney Lambert with the Co-Administrators, and Messrs. Tolbert and Rutherford met in Attorney Lambert's office and discussed Magistrate Judge Seibert's Order Granting the City of Martinsburg's Motion to Deem Requests Admitted.  Attached hereto please find an affidavit of Mr. George Rutherford ((*Exhibit "F"*).

Clearly, the Order Granting the Motion to Deem Requests Admitted did not "prejudice" or "harm" the Estate in any way because the matter did not go before a jury and the case settled out-of-court.  The evidentiary value and weight of the admission never came to fruition and there is no way of ever knowing whether what would have occurred at trial. So, the argument the admission was damaging is highly speculative in nature.  But one thing is for sure, the admission did not prevent the award of 3.5 Million Dollars to settle the case out-of-court.

6

More importantly, there was no truth in the allegations asserted in the Motion to Strike the Charging Lien of Attorney Lambert that the settlement was "prejudiced" or "harmed" by the Order Granting the Motion to Deem the Requests Admitted.

Clearly, Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, did not argue or remotely suggest that the Order Granting the Motion to Deem the Requests Admitted prevented the Estate from obtaining 3.5 Million Dollars. The fact of the matter is that Attorney Lambert filed the lawsuit and filed for mediation in the United States Court of Appeals for the Fourth Circuit.

Clearly, Attorney Lambert may have obtained the very same verdict or more, if the Co-Administrators' had not thwarted his mediation efforts in the United States Court of Appeals for the Fourth Circuit. But for Attorney Lambert's efforts, there would not have been a settlement in this case.

**2. Lambert, for the Jones Estate, filed a Notice of Appeal to the Fourth Circuit on October 21, 2014 (Ex B-Dkt#163). Therein, Lambert requested to be withdrawn as counsel (See Ex B-Dkt#168, entered November 12, 2014, granting request to withdraw submitted within the Notice of Appeal, Dkt#163). The co-admins of the estate were at this time both confused and upset with Lambert for his failures (of which they were not fully aware until later) and for abandoning them (withdrawing) at this crucial time.**

*Response:*

On October 21, 2014 Attorney Lambert filed a Notice of Appeal in the United States District Court for the Northern District of West Virginia. (***Exhibit "G"***).

On October 29, 2014, Attorney Lambert duly filed a Docketing Statement in U.S. District Court for the Fourth Circuit. (***Exhibit "H"***).

The case is now in the United States Court of Appeals for the Fourth Circuit.

On November 7, 2014, Attorney Lambert contacted Co-Administrator Bruce A. Jones to advised that a mediation form needed his signature.

On November 8, 2014, Attorney Lambert drove to the address provided by Bruce Jones. Upon arrival, he was not at that address. A male occupant of the house (Va. License Plate No.: JKE8638) took Attorney Lambert to the residence where Bruce Jones was located. *(Exhibit "I")*

Co-Administrator Bruce A. Jones refused to sign the required documentation to participate in the mediation process.

Attorney Lambert attempted to contact Co-Administrator Robert L. Jones, by telephone and email. *(Exhibit "J")*. However, he received no response to his communications.

Again, the Co-Administrators' lied to this Court.

**3. The Jones Estate missed an opportunity to mediate the case following the first dismissal. Following the notice of appeal to the Fourth Circuit, it is customary to mediate with a Fourth Circuit mediator. However, Lambert sent a notice of cancellation to the co-admins of the Jones Estate the day the order was entered withdrawing him from the case (Ex C). That was the first the co-admins heard anything about mediation. At that time the co-admins were distraught both with the result (dismissal of the case) and with Lambert's indication he would withdraw from the case, leaving them without counsel.**

*Response:*

Oddly, Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, submitted an Exhibit identified as "C". After a close examination of this Exhibit, it clearly reveals that this one Exhibit **contains pages of two (2) separate letters**. The first page is on Attorney Lambert's stationary and is addressed to Mr. Robert L. Jones and Mr. Bruce A. Jones, with the Exhibit label

8

on the right-hand corner of the document. Additionally, the first page is dated, November 12, 2014.

Mysteriously, the second page is a continuing page from a letter dated, November 8, 2014. *(Exhibit "K").*

The problem is that the attorneys' intentionally withheld Attorney Lambert's complete seven (7) page document, dated November 8, 2014, with all enclosures, from the Court. This documentation is extremely favorable regarding the issue of the status of mediation and clearly show that the attorneys' and Co-Administrators manipulated the documents. With respect to the statement, **"co-admins were distraught both with the result (dismissal of the case) and with Lambert's indication he would withdraw from the case, leaving them without counsel"** is a sham dilatory tactic used to hide the truth.

Upon review of Attorney Lambert's additional disclosure *(Exhibit "L"),* it is obvious that the Jones Brothers were not distraught and lied about being left without benefit of legal counsel. This is reprehensible conduct.

Attorney Lambert's document dated, November 8, 2014 document, with enclosures, clearly explained to the status of the mediation process. In addition, the letter provided information from Donna S. Hart, Senior Resident Circuit Mediator, who scheduled the mediation for the Co-Administrators on **November 12, 2014 at 3:00 'clock, p.m.**

On November 8, 2014, after traveling to Winchester, Virginia, and meeting with Co-Administrator, Bruce Jones, he refused to sign the mandatory form for mediation participation, which independently caused cancellation of the mediation process, scheduled to begin on November 12, 2014 at 3:00 'clock, p.m.

Again, the Co-Administrators' lied to this Court.

9

More telling, on November 9, 2014, I received an email from Co-Administrator, Robert L. Jones, who clearly admits that he would <u>not</u> agree or sign the necessary documentation to participate in the mediation process in the United States Court of Appeals for the Fourth Circuit simply because he wanted insurance limits policy or go to trial.(***Exhibit "M"***).

The fact of the matter is that the Co-Administrators had every available opportunity to mediate with Attorney Lambert in the United States Court of Appeals for the Fourth Circuit.

On November 9, 2014, the attorney-client relationship was terminated by Co-Administrator Bruce A. Jones.  At that time, Attorney Lambert was advised that the Estate had retained an attorney named Bradley G. Pollack (hereinafter referred to as "Attorney Pollack"). (***Exhibit "N"***)

On November 10, 2014, Attorney Lambert received an email from Rand Cadmus, who claimed to be a retained paralegal hired by Co-Administrator Bruce Jones. (***Exhibit "O"***)

It is clear that the Co-Administrators' were never distraught, legally exposed or left without benefit of legal counsel.  And if they were, it was their own fault of vacillating.

On November 10, 2014, Attorney Lambert filed a Motion to Withdraw his Appearance in the United States Court of Appeals for the Fourth Circuit. (***Exhibit "P"***)

On November 12, 2014, due to Co-Administrators' refusal to engage in the mediation process, Donna Hart, Senior Resident Circuit Mediator, terminated mediation proceedings. (***Exhibit "Q"***)

Again, the allegations that the Co-Administrators were "distraught" and "prejudice financially" clearly resulted from their own conduct not associated with Attorney Lambert.

On January 7, 2015 the United States Court of Appeals for the Fourth Circuit, entered an Order granting Attorney Lambert's Motion to Withdraw from further representation on behalf of the Estate. (***Exhibit "R"***)

Clearly, Attorney Lambert did not abandon the Estate as alleged in the Motion.

Again, the Co-Administrators' lied regarding this issue.

**4.   Attorney Rocco Deleonardis entered his appearance on the eve of the deadline to file the Opening Brief for the first appeal, and continued, to work with Sapp, Cadmus and Feldbush until the undersigned entered his appearance prior to the Reply Brief deadline for the first appeal. As this Court is aware, the beneficiaries have agreed to those costs (with the exception of Marsha Maines) as they credit those persons for doing the work necessary to ensure the appeal was not lost before it started.**

*Response:*

Your Honor, Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, withheld information regarding the presence of another attorney between Attorney Lambert and Attorney Rocco Deleonardis (hereinafter referred to as "Attorney Rocco").  His name is Attorney Pollack. (*previously identified as Exhibit "L"*)

If Attorney Rocco entered his appearance on the eve of eve of the deadline to file the Opening Brief for the first appeal, that would be attributable to his own mismanagement or the conduct of the Co-Administrators' who hired Attorney Pollack or Attorney before Attorney Rocco.

Again, Christopher E. Brown, Esquire, Paul G. Taylor, Esquire, and the Co-Administrators' withheld the disclose and the identity Attorney Pollack.

11

5.   **Attorney Lambert filed a "Notice of Charging Lien" with this Court on October 14, 2016 (Ex D). Curiously, the document is witnessed and notarized, under oath, the following day, October 15, 2016.**

*Response:*

There is no legal requirement for a charging lien has to be notarized. However, the document was officially "certified" and "notarized" on the date filed, as evidenced by receipt stamped on the face of the document from the clerk's office.

6.   **The statement of services reveals numerous entries that are improper: - For the initial meeting that resulted in the signing of the retainer -3/18/2013.**

*Response:*

Christopher E. Brown, Esquire and Paul G. Taylor, Esquire, omitted the initial "email" communication between Attorney Lambert and Co-Administrator Robert L. Jones. The Estate was not charged for that initial consultation as alleged in the Motion to Strike Charging Lien of Attorney Lambert.

Attorney Lambert did not charge Co-Administrators' for the follow up teleconference with Co-Administrator Robert L. Jones.

Kindly review the email, dated Sunday, March 17, 2013 from Co-Administrator Bruce Jones. (*Exhibit "S"*)

Again, the Co-Administrators' were lying about this issue.

7.   **Lambert is billing the Jones Estate for his free advertising-his interviews with media, which Plaintiff submits is not proper (see entries for 3/20/13; 3/27/2013; 4/25/2013; 6/14/13; 8/28/13; 10/16/13; 4/16/14; 5/16/14; 5/17/14; 5/27/14; 6/14/14; 8/28/14; 10/8/14).**

*Response:*

12

Any and all media news interviews were client driven and approved.  In fact, the Co-Administrators' were present at the majority of the media interviews. Kindly review text messages and photographs of media coverage events. (***Exhibit "T"***)

Again, the Co-Administrators' were lying about this issue.

**8.   Corporate disclosure Complaint, 3.30 hours (??)**

*Response:*

Kindly review Doc#86 and Doc#87.  (5/22/14 – Two entries were made)

**9.   These alleged binders identified in the 9/1614 and 9/17/14 entry were not turned over / provided to the Jones brothers.  The Jones Estate does not challenge these costs; the Distribution Agreement reflects the beneficiaries have agreed to pay these costs from the proceeds of the settlement.**

*Response:*

This is another false statement.  All documents were provided to the Co-Administrators.

According to Attorney Lambert's Billing Statement, on 9/16/2014, the Co-Administrators were given a copy of the Notebook Binders.

On 9/17/ 2014 the Notebook Binders were created for the purpose of litigation and delivered to Judge Groh's Office, with a copy set provided and delivered to legal counsel for the City of Martinsburg.

Again, the Co-Administrators' were lying about this issue.

**10. The items identified in the 9/20/.14 entry were never provided to the Jones brothers.**

*Response:*

These items were provided to the Co-Administrators'.

**11. Lambert's Statement of Services includes an entry evidencing the date he received the Defendants' Requests for Admissions (Ex E-entry for 12/23/13, claimed hours). There are no entries for work performed on responding to discovery between 12/23/13 and 1/27/14.**

Clearly, the Certificate of Service, dated December 23, 2013, was duly filed in the clerk's office of the United States District Court for the Northern District of West Virginia, by the City of Martinsburg. However, the propounded discovery associated with the Certificate of Service was not received, on December 23, 2013.  Kindly review (*Exhibit "U"*)

**12. Lambert owed a duty to the Plaintiff, and had he satisfied that duty not only would Plaintiff have likely avoided the dismissal of its suit three times (arguably the qualified immunity appeal would have taken place regardless), this matter would not have taken six (6) years to resolve, this Court likely would not have granted summary judgment in the absence of the very damaging admitted facts (that Jones had a knife, attempted to stab an officer, and refused commands to drop the knife) and Plaintiff would not be facing the additional attorney's fees resulting from the several appeals.**

*Response:*

Based upon the evidenced adduced in Attorney Lambert's Exhibits, it clearly shows that the Co-Administrators are totally responsible for this case lingering for six (6) years to resolve and not the fault of Attorney Lambert.

Clearly, this Court dismissed the lawsuit on grounds of qualified immunity.  After a proliferation of opinions, the United States Court of Appeals for the Fourth Circuit resolved the issue concerning Magistrate Judge Seibert's Order Granting the Motion to Deem Requests Admitted.

14

It is of common knowledge that Attorney Lambert did not "prejudice" or "harm" the Estate in any way because the case did not go before a jury, meaning, *the knife was not admitted into evidence at trial*, and the case was settled out-of-court. So, there is no way of knowing the answer to this question other than speculation.

The admission of the knife did not prevent the case being settled for 3.5 Million Dollars. You can't have it both ways. The Order and opinion of the United States Court of Appeals for the Fourth Circuit resolved the admissions issue and the only reason Christopher E. Brown, Esquire and Paul G. Taylor, Esquire are revisiting this issue is at this pre-disbursement phase of these proceedings is that they don't want to pay Attorney Lambert for his legal services.

## THE LAW REGARDING ATTORNEY CHARGING LIENS

See *Abramson ex rel. Estate of Abramson v. Laneko Eng'g Co.*, 370 F. Supp. 2d 498 (S.D.W. Va. 2005).

Abramson lays out the rules courts follow in awarding fees to former counsel:

The general rule comes from the West Virginia Supreme Court of Appeals decision in *Clayton v. Martin,* 108 W.Va. 571, 151 S.E. 855, 856–57 (1930): "If the contract between attorney and client be broken without fault on the part of the attorney, he may recover damages for breach, or on quantum meruit, for the reasonable value of his services. In either case the jury must be furnished with evidence of the damage, or with evidence of the value of the services rendered. But if the compensation under the contract is contingent on the success of the suit, and the attorney is discharged without fault on his part, the measure of damages is not the contingent fee, but a reasonable compensation for the services actually rendered." This rule was reaffirmed by the court in *Hardman v. Snyder,* 183 W.Va. 34, 393 S.E.2d 672 (1990), and appears to be the general rule in most jurisdictions. *See* 56 ALR 5th 1.

15

In determining reasonable compensation for legal services involves weighing several factors. The West Virginia Supreme Court of Appeals has addressed the factors to be considered a number of times.

In Syllabus Point 3 of *Stafford v. Bishop,* 98 W.Va. 625, 127 S.E. 501 (1925), the Court summarized the factors as "the attorney's ability, skill, experience, diligence, and standing in his profession, as well as the nature and extent of the services performed, the difficulties encountered, the responsibility assumed, the amount involved, the physical and mental labor expended, the results achieved, their benefit to the client, and the usual and customary charges for like services in the same vicinity." Although the factors have since been restated and expanded, the analysis remains largely unchanged. In *Statler v. Dodson,* 195 W.Va. 646, 466 S.E.2d 497 (1995), the court listed the factors regarding a reasonable fee in Rule 1.5(a) of the Rules of Professional Conduct:

1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;

2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

3) the fee customarily charged in the locality for similar legal services;

4) the amount involved and results obtained;

5) the time limitations imposed by the client or by the circumstances;

6) the nature and length of the professional relationship with the client;

7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8) whether the fee is fixed or contingent.

*Id.* at 505–06.

The court then noted that it generally considered a greater range of factors, such as those outlined in the syllabus of *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986):

The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 506.

These cases firmly establish that in determining the fair value of an attorney's services, **the court is to consider many factors beyond the number of hours devoted to a case.** *Abramson ex rel. Estate of Abramson v. Laneko Eng'g Co.,* 370 F. Supp. 2d 498, 499–500 (S.D.W. Va. 2005).

In short, it's an equitable determination based on a lot of factors, but almost all of them weigh heavily in Attorney Lambert's favor.

In Syl.Pt. 2, *Kopelman and Associates, L.C. v. Collins,* 196 W.Va. 489, 473 S.E.2d 910 (1996), the circuit court issued a thirty-five page Memorandum Opinion and Order, awarding the attorney's fee as follows: 55% to The Calwell Practice; 33% to petitioners and 12% to Thomas Basile. In reaching the award, the circuit court indicated that it followed a quantum meruit analysis as expressed in *Kopelman.*

17

In *Trickett v. Laucita,* 223 W.Va. 357, 674 S.E.2d 218 (2009) the Court held that a charging lien in a particular case considered four factors to be determinative: "[T]here are four requirements for the imposition of an attorney charging lien."

First, there must be a valid contract between the attorney and the client, although the contract need not be express.

Second, there must be a judgment, or "fund," that resulted from the attorney's services.

Third, the attorney must have given clear and unequivocal notice that he intends to assert a lien, and notice must be given to the "appropriate parties."

Finally, the lien must be timely notice of the lien must be given "before the proceeds [from] the judgment have been distributed."

Clearly, Attorney Lambert is in compliance with a four (4) prongs of Trickett.

Against the Estate of Wayne A. Jones' settlement proceeds, Attorney Lambert seeks to recover his unpaid attorney's fees that were incurred before his discharge as legal counsel for the Estate of Wayne A. Jones.

Given the lengthy and convoluted procedural history of the underlying lawsuit, it is clearly apparent that Attorney Lambert's representation of the Estate of Wayne A. Jones contributed in to the ultimate settlement of this actions.

In closing, it appears that Your Honor has discretionary supplemental jurisdiction to resolve fee disputes regarding an attorney charging lien as long as the case has not been dismissed with prejudice. See *Ziegenfuss Drilling, Inc. v. Frontier-Kemper Constructors, Inc.,* No. CIV.A. 2:07-CV-00342, 2009 WL 3644909, at *1 (S.D.W. Va. Oct. 30, 2009).

Attorney Lambert is requesting this Honorable Court to award him attorney fees

according to law.

19

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
(Martinsburg Division)

ESTATE OF WAYNE A. JONES,
BY ROBERT L. JONES AND BRUCE A. JONES,
ADMINISTRATORS OF THE
ESTATE OF WAYNE A. JONES,

        Plaintiffs,

v.

                                      Docket No.: 3:13-cv-68
                                      (Judge Gina M. Groh)

THE CITY OF MARTINSBURG, WEST VIRGINIA,
PFC. ERIK HERB,
PFC. DANIEL NORTH,
PTLM. WILLIAM STAUBS,
PTLM. PAUL LEHMAN, AND
PFC. ERIC NEELY,

        Defendants.

## CERTIFICATE OF SERVICE,

    I, Sherman L. Lambert, Sr., Esquire, hereby certify that I served a true copy of the

attached **OPPOSITION TO MOTION TO STRIKE CHARGING LIEN OF ATTORNEY**

**LAMBERRT, WITH EXHIBITS** and **CERTIFICATE OF SERVICE**, by electronic filing

with the Clerk of the Court using the CM/ECF system, on this 8th day of September 2020, and

sent to the following persons:

        Christopher Brown, Esquire
        526 King Street, Suite 213
        Alexandria, VA 22314


        and

20

Paul Taylor, Esquire
134 W. Burke Street
Martinsburg, WV 25401

By: "s/" Sherman L. Lambert, Sr., Esquire
Sherman L. Lambert, Sr., Esquire
SHERMAN L. LAMBERT, SR., P.L.L.C.
WVSB No.: 2129
P.O. Box 3200
Shepherdstown, WV 25443
(304) 263-3548
sherman@shermanlambertlaw.com

21