# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## Martinsburg Division

**THE ESTATE OF WAYNE JONES,**

    **Plaintiff,**

vs.                                                                         **Civil Action No.: 3:13-CV-68**

**THE CITY OF MARTINSBURG, WEST VIRGINIA, et al.**

    **Defendants.**

## ATTORNEY SHERMAN LAMBERT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW Attorney Sherman Lambert, by and through his counsel, Eric S. Black, Esquire, on this 30th day of October, 2020, respectfully to file the following Attorney Sherman Lambert's Proposed Findings of Fact and Conclusions of Law in the above styled matter:

## FINDINGS OF FACTS

1. The instant litigation arises out of the death of Wayne A. Jones on March 13, 2013. Mr. Jones was shot multiple times by officers of the Martinsburg Police Department in Martinsburg, West Virginia.

2. Subsequent to his death, the Co-Administrators of the Estate of Wayne A. Jones retained the services of the Law Offices of Sherman L. Lambert, Sr., PLLC and Sherman Lambert, Esquire to pursue civil litigation against the City of Martinsburg Police Department and other Defendants. The Co-Administrators of the Estate of Wayne Jones executed a Contingent Fee Agreement retaining the services of Attorney Lambert on March 18, 2013.

3. The Contingent Fee Agreement executed by the Plaintiff contained the following language regarding Attorney Lambert's fee and costs:

> Lawyer's Fee: Client will pay to Lawyer, as compensation for legal services of any out-of-court Settlement, forty percent (40%) of all monies and things of value received. If this case goes to the stage of trial where a jury is empaneled, or in-court verdict by judge or jury, Client will pay to Lawyer forty-five (45%) of all monies and things of value recovered in the matter.
>
> Advancement of Money for Fees: The law firm may advance money to client to cover the above-mentioned fees and other costs not mentioned herein, associated with this matter; and all money advanced to client shall be reimbursed at the time of out-of-court settlement or in-court verdict regarding the case.

4. On June 13, 2013, Attorney Lambert filed a civil Complaint in the United States District Court for the Northern District of West Virginia alleging the Defendants used excessive force and violated Mr. Jones' rights. (Dkt. #1).

5. As the record reflects, the case proceeded through the discovery process and dispositive motions were granted by the District Court on October 15, 2014, dismissing the civil action. (Dkt. #162). Attorney Lambert timely and properly filed a Notice of Appeal with the Fourth Circuit Court of Appeals on October 21, 2014 (Dkt. #163).

6. As asserted by the Plaintiff in its Motion to Strike, it is customary to conduct mediation with a Fourth Circuit mediator when an appeal has been noticed. To facilitate the mediation, Attorney Lambert forwarded a letter to the Co-Administrators on November 8, 2014, which included a detailed "Notice of Scheduled Mediation before Mediator Donna S. Hart." Attorney Lambert's letter also included an Authorization for Mediation Authority to be signed by the Co-Administrator.

7. The Notice clearly set forth the mediation process and confirmed a mediation status meeting for November 12, 2014, at 3:00 p.m. In an effort to accommodate the Co-Administrator, and to facilitate mediation, Attorney Lambert traveled to Winchester, Virginia to meet and obtain the client's signature on the Mediation Authorization. As reflected by the

Co-Administrator's text communication on November 9, 2014, the Co-Administrator refused to sign the Authorization giving Attorney Lambert the authority to proceed with mediation. The mediation was ultimately canceled as a result of the Co-Administrator's failure to authorize the mediation.

8.  The Co-Administrators advised Attorney Lambert by text message on November 9, 2014 at 12:41 p.m., they have "lost faith in you and I have a attorney in Virginia if you wish to call him and explain to him why I should sign these papers I would rather here it form him his name is Bradley G. Pollack." Not only did the Co-Administrators advise Attorney Lambert they no longer wanted him as counsel, they identified their new legal counsel.

9.  Attorney Lambert immediately responded to confirm the Co-Administrator's decision to terminate his legal representation. Attorney Lambert provided the following response on November 9, 2014, at 12:41 p.m.:

> Thank you for advising and confirming that you retain (sic) substitute legal counsel for the appeal. I will notify the U.S. Court of Appeals for the fourth Circuit that you have retain (sic) substitute legal counsel and I will advise the Berkeley County Fiduciary office and withdraw from your appeal tomorrow morning. Please let your Lawyer know that I will send him the scheduling order. Your appendix and brief is due on December 1, 2014. Moreover, your lawyer should contact the clerk's office immediately. we wish you the best.

10. Following his text message conversation with the Co-Administrator, Attorney Lambert filed his Motion to Withdraw from the case on November 10, 2014.

11. Attorney Lambert completed his representation in the United States District Court for the Northern District of West Virginia prior to his termination by the Plaintiff. The District Court had granted Plaintiffs' Motion for Summary Judgment with prejudice and the case was retired from the Court's docket.

12. Attorney Lambert timely and properly filed a Notice of Appeal with the Fourth Circuit Court of Appeals on October 21, 2014 (Dkt. #163). The Fourth Circuit Clerk's Office assigned a new case number and the appeal was duly docketed.

13. During the pendency of the appeal before the Fourth Circuit, Attorney Lambert withdrew from the appeal "for good cause" because he had been terminated by the Plaintiff and advised that successor counsel had been obtained.

14. Subsequent to being discharged by the Plaintiff, Attorney Lambert filed a Notice of Attorney's Charging Lien in U.S. District Court on October 14, 2016, timely asserting a lien for attorney fee compensation.

15. The parties ultimately settled and resolved the litigation as evidenced by the Motion for Approval of Settlement and Distribution of Proceeds filed by the Plaintiff on August 23, 2020. (Dkt. #272).

16. Plaintiff subsequently filed a Motion to Strike Charging Lien of Attorney Lambert on the 1st day of September, 2020, seeking to strike Attorney Sherman Lambert's charging lien (Dkt. #278).

17. Attorney Lambert filed a Supplemental Response to Plaintiff's Motion to Strike Charging Lien on the 14th day of October, 2020. (Dkt. #290). In his Supplemental Response, Attorney Lambert moved the Court to deny Plaintiff's Motion to Strike Charging Lien and award attorney Lambert his forty percent (40%) attorney fee as set forth in the Contingent Fee Agreement executed by the Co-Administrators.

18. The Court conducted an evidentiary hearing on October 19, 2020, at which time it heard the testimony of Co-Administrator Bruce Jones and Attorney Lambert. Attorney Lambert testified that he worked diligently on the Plaintiffs' case but his efforts were hindered by the Co-Administrator's lack of cooperation on several fronts.

19. Attorney Lambert testified that he: properly investigated the Plaintiffs' case; timely filed a civil action in the United States District Court for the Northern District of West Virginia; arranged numerous press conferences and media events at the Plaintiffs' behest to draw attention to their case; attempted to diligently respond to discovery despite the Plaintiffs' lack of cooperation; traveled to Winchester, Virginia for client meetings and to obtain documents and signatures; frequently attempted to contact the Co-Administrators without success; that he only withdrew from the case after the Co-Administrators advised they no longer wanted him as counsel and had obtained separate Virginia counsel; and that he timely filed a Notice of Intent to Appeal with the Fourth Circuit to protect the Plaintiffs' appellate rights.

20. Attorney Lambert further testified that he was seeking a 40% attorney fee based upon the Contingency Fee Agreement executed by the Co-Administrators on March 18, 2013.

21. The Motion to Strike Attorney Lambert's Charging Lien is found to be frivolous, not in compliance with Rule 11 of Federal Rules of Civil Procedure, and contains material misrepresentations to the Court that were intended to divest Attorney Lambert of his 40% contingent fee or a split of his pro rata share.

22. Successor Attorney Brown has disclosed an attorney fee of $1.75 million, and the same is unreasonable based upon an analysis of Rule l.5 and the West Virginia Supreme Court's holding in *Pitrolo*.

23. The total attorney fees in this matter are substantial and the product of efforts by both Attorney Lambert and Attorney Brown. Attorney Lambert's fee is first in time and first in right, and it is appropriate to split the fee between both counsel.

## CONCLUSIONS OF LAW

1.  Attorney Sherman Lambert's forty percent (40%) contractual attorney fee is a reasonable fee pursuant to West Virginia law and is hereby approved by this Court.

2.  The Co-Administrators of the Estate of Wayne Jones executed a Contingent Fee Agreement retaining the services of Attorney Lambert on March 18, 2013. The Contingent Fee Agreement contained the following language regarding Attorney Lambert's fee and costs:

    > Lawyer's Fee: Client will pay to Lawyer, as compensation for legal services of any out-of-court Settlement, forty percent (40%) of all monies and things of value received. If this case goes to the stage of trial where a jury is empaneled, or in-court verdict by judge or jury, Client will pay to Lawyer forty-five (45%) of all monies and things of value recovered in the matter.
    >
    > Advancement of Money for Fees: The law firm may advance money to client to cover the above-mentioned fees and other costs not mentioned herein, associated with this matter; and all money advanced to client shall be reimbursed at the time of out-of-court settlement or in-court verdict regarding the case.

3.  Subsequent to being discharged by the Plaintiff, Attorney Lambert filed a Notice of Attorney's Charging Lien in U.S. District Court on October 14, 2016, timely asserting a lien for attorney fee compensation.

4.  West Virginia case law and the West Virginia Rules of Professional Conduct set forth a multi-factored standard when assessing the value of an attorney's fee for legal representation. Rule 1.5 of the West Virginia Rules of Professional Conduct articulates the factors to be considered when assessing the reasonableness of an attorney's fee. Rule 1.5 further expressly contemplates an attorney fee that is "contingent on the outcome of the matter:"

    > Rule 1.5 Fees
    > 1. A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

6

1. the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

3. the fee customarily charged in the locality for similar legal services;

4. the amount involved and results obtained;

5. the time limitations imposed by the client or by the circumstances;

6. the nature and length of the professional relationship with the client;

7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent.

. . . . . . .

3. A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

5. In addition to the factors set forth in Rule 1.5 of the Rules of Professional

Conduct, the West Virginia Supreme Court has held the following regarding attorney fees:

The reasonableness of attorney's fees is generally based on broader factors such as those listed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). In Johnson, the Fifth Circuit established the following list of Page 162 [176 W.Va. 196] factors relevant to the calculation of reasonable attorney's fee awards: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case;

7

(5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *... Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156, 176 W.Va. 190 (W. Va. 1986).

6. In the instant case, as permitted and provided by Rule 1.5, the Contingent Fee Agreement was executed by the Co-Administrators on March 18, 2013. The Agreement was "in writing" and "signed by the client." The Agreement clearly and expressly stated the method by which Attorney Lambert's fee was to be determined and expressly included the "percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal." In short, the Plaintiff executed a valid and enforceable contingent fee agreement with Attorney Lambert and should be bound by the same.

7. Additionally, analysis of the various factors set forth in *Pitrolo* and Rule 1.5 confirm that Attorney Lambert's forty percent (40%) charging lien is both reasonable and enforceable. A review of the factors set forth in *Pitrolo* demonstrates the reasonableness of attorney's Lambert's forty percent (40%) attorney fee:

(1) Time and labor required: Plaintiff executed the Contingent Fee Agreement on March 18, 2013. Attorney Lambert investigated the case and initiated a civil action in U.S. District Court on June 13, 2013. Attorney Lambert litigated the matter though the pleading, discovery and motion practice phases until his final withdrawal was granted on January 7, 2015. During the course of his lengthy involvement, Attorney Lambert expended in excess of 330 hours on the Plaintiff's case. Attorney Lambert frequently traveled to meet the Co-Administrators for their convenience at various hours and conducted numerous press conferences to bring attention to the Plaintiff's claims (many of which were attended by the Plaintiff).

(2) The novelty and difficulty of the questions: The violation of rights/excessive force civil action filed by Attorney Lambert on behalf of the Plaintiffs involved complex and difficult questions of law and fact. The litigation involved claims against municipal agencies, claims of qualified immunity, and claims of excessive force by government employees. The case was aggressively defended by multiple Defendants and counsel as evidenced by the record.

(3)      The skill requisite to perform the legal service properly: Attorney Lambert is a highly experienced attorney who has previously litigated civil rights and related claims. Attorney Lambert was licensed by the West Virginia State Bar on October 7, 1984, and has practiced law for more than 35 years in both criminal and civil proceedings.

(4)      The preclusion of other employment by the attorney due to acceptance of the case: Attorney Lambert is a sole practitioner who devoted more than 330 hours to the Plaintiff's case. Attorney Lambert's commitment to Plaintiff's case limited his time and availability to procure other retained clients.

(5)      The customary fee: The customary fee for Attorney Lambert's legal services is a contingent fee structure. Such a structure assures the client that no initial retainer fee is required, and any final fee is contingent upon a successful recovery in the case. The attorney assumes the risk of non-collection and the advancement of costs to the client. The arrangement is recognized and authorized by Rule 1.5 of the West Virginia Rules of Professional Conduct. In the instant case, the Plaintiff knowingly and voluntarily executed a Contingent Fee Agreement on March 18, 2013. The Contingent Fee Agreement provided that Attorney Lambert would receive forty percent (40%) of any settlement or recovery—a fee that is customary in the legal practice.

(6)      Whether the fee is fixed or contingent: By executing the Contingent Fee Agreement, the Plaintiff entered into an enforceable contractual arrangement to pay Attorney Lambert forty percent (40%) of any settlement or recovery. Plaintiff has not denied or challenged the voluntariness and legal validity of said Agreement.

(7)      Time limitations imposed by the client or the circumstances: Attorney Lambert expended a substantial amount of in-office and out-of-office time accommodating the needs and requirements of the Co-Administrators. Attorney Lambert on many occasions was required to travel and meet the Co-Administrators during evening hours or frequently communicate with them by phone and text message. The case, including press conferences, consumed a substantial amount of Attorney Lambert's time. In addition to the time commitment, Attorney Lambert advanced costs on behalf of the Plaintiff in excess of $16,000.00.

(8)      The amount involved and the results obtained: The amount involved and the results obtained are substantial. The case has settled at mediation for the sum of $3,500,000.00.

(9)      The experience, reputation and ability of the attorneys: Attorney Lambert is a highly experienced attorney who has successfully litigated civil rights claims in the Northern District of West Virginia. Attorney Lambert was licensed by the West Virginia State Bar on October 7, 1984, and has practiced law for more than 35 years in civil litigation.

(10) The undesirability of the case: The case involved the shooting of a citizen by law enforcement officers and included allegations of excessive force. The market of available attorneys to pursue such claims is very small and limited. Attorney Lambert agreed to accept Plaintiff's case and commit a substantial part of his practice to litigating Plaintiff's claims.

(11) The nature and length of the professional relationship with the client: The nature of the relationship was very difficult for Attorney Lambert due to the difficult and deceptive nature of the Co-Administrators. The Co-Administrators were often not cooperative with counsel and often failed or refused to process and complete necessary documentation and requests including discovery, mediation and related matters.

(12) Awards in similar cases: Attorney Lambert has previously successfully litigated similar matters in the Northern District of West Virginia, including *Steven C. Scott v. City of Ranson et al.*, 3:07-cv-138.

8. Contrary to the claims asserted in Plaintiff's Motion Strike Charging Lien, Attorney Lambert's forty percent (40%) contingent fee is reasonable under both West Virginia case law and Rule 1.5 of the West Virginia Rules of Professional Conduct.

9. Plaintiff's Motion to Strike Charging Lien fails to address or contest the "reasonableness" analysis set forth in *Pitrolo* and Rule 1.5 of the Rules of Professional Conduct. Instead, Plaintiff and its counsel assert that Attorney Lambert's charging lien is deficient, "not proper," and should be stricken by the Court. Even a cursory review of the record, however, confirms that Attorney Lambert properly perfected and asserted his charging lien. In *Trickett v. Laurita*, 674 S.E.2d 218, 223 W.Va. 357 (W. Va. 2009), the West Virginia Supreme Court held the following:

> We find these considerations to be consistent with our body of statutory and case law regarding attorney's charging liens, and, thus, similarly hold that there are four requirements for the imposition of an attorney's charging lien against an attorney's client or former client. First, there must be a valid oral or written contract between the attorney and the attorney's client or former client. Second, there must be a judgment or fund that resulted from the attorney's services. Third, the attorney must have filed notice of his/her intent to assert a charging lien, and such notice must have been served on the attorney's client or former client against whose interest in said judgment or fund the lien is sought to be enforced. Fourth, notice of the lien must be filed before the proceeds of the judgment or fund have been distributed. *Id*.

10. In the instant case, Attorney Lambert's Charging Lien clearly meets the four-part test set forth in *Trickett v. Laurita*, *supra*. First, there is a valid written contract between Attorney Lambert and the Co-Administrators as evidenced by the Contingent Fee Agreement executed by the Co-Administrators on March 18, 2013. Second, there is a proposed judgment/fund that resulted from the attorney's services. Attorney Lambert initiated and litigated the civil action for several years. But for his efforts in initiating and litigating the case, the instant settlement would not be possible. Third, Attorney Lambert timely and properly filed his intent to assert a charging lien as evidenced by his Notice of Attorney's Charging Lien filed in U.S. District Court on October 14, 2016. Fourth, Attorney Lambert has clearly filed his Notice of Attorney's Charging Lien well before the proceeds of the settlement fund have been distributed.

11. The Plaintiff's Motion to Strike Attorney Lambert's Charging Lien fails to provide any analysis of the reasonableness factors set forth in *Pitrolo* and Rule 1.5 of the Rules of Professional Conduct.

12. Instead, the Plaintiff attacks Attorney Lambert's representation and makes several claims that materially misrepresent critical facts to this Court. First, the Plaintiff asserts that Attorney Lambert voluntarily withdrew from the case without cause and therefore is not entitled to his attorney fee. Plaintiff's Motion to Strike expressly makes the following claims:

> "The co-admins of the estate were at this time both confused and upset with Lambert for his failures (of which they were not fully aware until later) and for abandoning them (withdrawing at this crucial time)." (Dkt. 278, pg. 2).

> "It is expected that Lambert, in his response hereto, will have no evidence to show he was terminated." (Dkt. 278, pg. 8).

13. Contrary to the Plaintiff's claims, however, the Co-Administrators directly advised Attorney Lambert through text message on November 9, 2014 at 12:41 p.m., they

11

have "lost faith in you and I have a attorney in Virginia if you wish to call him and explain to him why I should sign these papers I would rather here it form him his name is Bradley G. Pollack." Not only did the Co-Administrators advise Attorney Lambert they no longer wanted him as counsel, they identified their new legal counsel.

14. Attorney Lambert immediately responded to confirm the Co-Administrator's decision to terminate his legal representation. Attorney Lambert provided the following response on November 9, 2014, at 12:41 p.m.:

> Thank you for advising and confirming that you retain (sic) substitute legal counsel for the appeal. I will notify the U.S. Court of Appeals for the fourth Circuit that you have retain (sic) substitute legal counsel and I will advise the Berkeley County Fiduciary office and withdraw from your appeal tomorrow morning. Please let your Lawyer know that I will send him the scheduling order. Your appendix and brief is due on December 1, 2014. Moreover, your lawyer should contact the clerk's office immediately. we wish you the best.

15. Following his text message conversation with the Co-Administrator, Attorney Lambert filed a Motion to Withdraw from the case on November 10, 2014. As can be clearly seen from the record, it was the Plaintiff who terminated the attorney-client relationship and retained new legal counsel. Plaintiff's claim that Attorney Lambert voluntarily withdrew without just cause is a material misrepresentation and wholly without merit.

16. Plaintiff also states "[T]he evidence will show that Lambert misled the co-admins, stating the case was dismissed given Wayne Jones' background and other blatantly false reasons (clearly avoiding the real reason the case was dismissed-the admitted facts." A review of the record and emails, however, clearly demonstrates Attorney Lambert fully communicated the admissions issue to the Plaintiff and its impact on the litigation. During the course of litigation, and at the Plaintiff's request, Attorney Lambert invited the NAACP Jefferson County Chapter President to attend meetings and to provide community support. Chapter President George C. Rutherford attended a meeting at Attorney Lambert's office on

12

April 18, 2014, where issues related to the case were discussed. Mr. Rutherford confirms the following:

> On or about April 18, 2014, Mr. Tolbert and I met with the Jones Brothers in Attorney Lambert's office and discussed the fact that a Judge issued an Order Granting the City of Martinsburg's motion to admit some discovery documents. During the discussion, Attorney Lambert explained to the Jones Brothers that the Judge said the response to the discovery request were two-days late and the evidence of a knife would be admitted into evidence at trial. The Jones Brothers were not upset with Attorney Lambert and said that they did not care and wanted to go to trial.

17. Second, the Plaintiff falsely asserts that the Plaintiff missed an opportunity to mediate the case, and only discovered the possibility of mediation after Attorney Lambert sent a notice cancelling mediation. In its Motion to Strike Charging Lien, the Plaintiff asserts the following:

> The Jones Estate missed an opportunity to mediate the case following the first dismissal. Following the notice of appeal to the Fourth Circuit, it is customary to mediate with a Fourth Circuit mediator. However, Lambert sent a notice of cancellation to the co-admins of the Jones Estate the day the order was entered withdrawing him from the case. That was the first the co-admins heard anything about mediation. At that time the co-admins were distraught both with the result (dismissal of the case) and with Lambert's indication he would withdraw from the case, leaving them without counsel. (Dkt. 278,pg. 9).

18. Contract to Plaintiffs' claims, however, the record and documentation clearly indicate the Co-Administrators were well aware of the mediation but failed and refused to sign the necessary forms to facilitate the mediation. The mediation was canceled due to the actions of the Co-Administrators. Attorney Lambert forwarded a letter to the Co-Administrators on November 8, 2014, which included a detailed "Notice of Scheduled Mediation before Mediator Donna S. Hart.

19. The Notice clearly set forth the mediation process and confirmed a mediation status meeting for November 12, 2014, at 3:00 p.m. In an effort to accommodate the Co-Administrator, and to facilitate mediation, Attorney Lambert traveled to Winchester, Virginia to meet and obtain the client's signature on the Mediation Authorization. As reflected by the

13

Co-Administrator's text communication on November 9, 2014, the Co-Administrator refused to sign the Authorization giving Attorney Lambert the authority to proceed with mediation. Contrary to Plaintiff's claims in its Motion to Strike Charging Lien, the mediation was canceled due to the conduct and actions of the Co-Administrators. Plaintiff's claim that Attorney Lambert was at fault is wholly without merit and a material misrepresentation of the facts.

20. Third, Plaintiff asserts in its Motion to Strike that Attorney Lambert billed the Jones Estate "for his free advertising—his interviews with media, which Plaintiff submits is not proper." As reflected by the record, however, the Co-Administrators requested the input and participation of the NAACP, authorized public appearances to raise awareness about the death of Wayne Jones, and further attended many of the interviews and media events. As reflected by the Affidavit of George Rutherford: "The Jones Brothers agreed that Mr. Tolbert and I would attend meetings with them and Attorney Lambert."

21. The documents and electronic communication from the Co-Administrators clearly demonstrate their will and desire to pursue media appearances to bring attention to their case. As reflected by a text message from Co-Administrator Bobby Jones on November 16, 2013, Mr. Jones states: "Mr. Lambert I am trying to make sure I have my facts right before I meet with cnn and Mr. Stamp from al sharptons NAN. I will inform that even tho (sic) I'm the brother and the administrator of Wayne I can't release any information obtained from the judges discovery order to the press…" The Court finds Attorney Lambert arranged the requested media appearances at the behest of the Plaintiffs and their desire to bring attention to the Jones case.

WHEREFORE, based upon the foregoing, the Court hereby DENIES Plaintiff's Motion to Strike Charging Lien of Attorney Lambert. The Court further awards Attorney

Lambert his contractual and reasonable attorney fee of $1,400,000.00—said sum representing forty (40) percent of the gross settlement proceeds.

                                                Respectfully submitted,
                                                Attorney Sherman Lambert
                                                By counsel,

  /s/  Eric S. Black, Esq.
Eric S. Black, Esquire  State Bar #7567
380 South Washington Street
Berkeley Springs, WV  25411
(304) 258-2931

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Martinsburg Division**

**THE ESTATE OF WAYNE JONES,**

    **Plaintiff,**

vs.                                                                   **Civil Action No.: 3:13-CV-68**

**THE CITY OF MARTINSBURG, WEST VIRGINIA, et al.**

    **Defendants.**

### CERTIFICATE OF SERVICE

I, Eric S. Black, Esquire, counsel for Attorney Sherman Lambert, do hereby certify that I have served a true and accurate copy of the foregoing **ATTORNEY SHERMAN LAMBERT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** by filing the same electronically using the CM/ECF system and by U.S. Mail, first class, postage prepaid, this 30th day of October, 2020:

Honorable Judge Gina M. Groh                  Paul Taylor, Esquire
Chief U.S. District Judge                            134 W. Burke Street
217 W. King Street                                  Martinsburg, WV 25401
Martinsburg, WV 25401

Christopher Brown, Esquire
526 King Street, Suite 213
Alexandria, VA 22314

                                                           /s/ Eric S. Black, Esq.
                                                           Eric S. Black, Esquire