**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Martinsburg Division**

THE ESTATE OF WAYNE JONES

    Plaintiff,

V                                                             CIVIL ACTION NO.: 3:13-CV-68
                                                              (GROH)

THE CITY OF MARTINSBURG, WEST
VIRGINIA, et al

    Defendants.

### PLAINTIFF'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

As requested by this Court, Plaintiff ("the Estate"), by counsel, respectfully submits the following Findings of Fact and Conclusions of Law.

### Introduction

At the conclusion of the October 19, 2020, hearing on Plaintiff's Motion to Strike Lambert's Charging Lien, the Court invited the parties to submit findings of Fact and Conclusions of Law. Plaintiff submits the following facts established at the hearing, which warrant this Court to strike Lambert's charging lien in the instant case.

Further, from the bench the Court invited Lambert to submit his proposed attorney's fees. Plaintiff was willing to stipulate to a number [for what it believed was "for Lambert's time"] at that time to try to resolve the issue. However, Lambert expressed his desire to submit his fees to the Court at a later date, the Court issued a paperless order directing him to do so, and he has submitted his claim for the clearly unreasonable figure of $20,000.00 (Dkt#299). Plaintiff respectfully advises that it vehemently objects to such an award. Granting an order in Lambert's favor for his attorney's fees is unwarranted here because – 1) he did not request attorney's fees as part of his lien, in his responsive pleading, nor in his recently filed Findings of Fact and

1

Conclusions of Law (Dkt#298, the "WHEREFORE," which reads like a proposed order, but nonetheless does not request attorney's fees); 2) his retainer agreement contains no basis to recover attorney's fees in a dispute with the client (see Fact #4, *infra*); and 3) no case law, statute, or rule suggests attorney's fees are available as a form of relief in this context.

While there is case law supporting an attorney's right to recover fees and costs for enforcement of a judgment, and other incidental related costs (see *In re Larosa*, 449 B.R. 258, 264 (Bankr. N.D. W.Va. 2011)), but none grant a right to recover attorney's fees and costs tied to a charging lien and challenges thereto, i.e. the dispute with the client. *Trickett v. Laurita*, 674 S.E.2d 218, 228 (W. Va. 2009)("Therefore, the circuit court, on remand, should consider Mr. Wigal's fees, costs, and expenses incurred *in his representation of Mr. Trickett* in determining the amount of GBW's charging lien.")(emphasis added). The terms for recovery are predicated on and subject to the terms of the contract – i.e., the retainer agreement, which in this case, says nothing of providing Lambert's a right to recover attorney's fees and costs through a dispute with his former client. The only exception to non-recovery is if bad faith is present, which is not alleged by Lambert (addressed *infra* as it relates to his bad faith and Plaintiff's request for attorney's fees).

Lambert's persistence in claiming a 40% contingency is in bad faith given: 1) the express terms of the retainer agreement; and 2) his *decision* to respond to the Defendants' requests for admissions late and *decision* to <u>not</u> subsequently file an objection to the magistrate's order deeming them admitted, despite being fully aware of the adverse and material impact such inaction would have on Plaintiff's case. Under these facts, applicable law and equity warrants that Plaintiff be granted a setoff resulting in: 1) Lambert being awarded $0 in attorney's fees and costs; and 2) attorney's fees awarded to Plaintiffs for having to challenge the Charging Lien (given the bad faith

2

of Lambert); and 3) interest accrual on the Plaintiff's settlement funds, stemming from the approximately 60 days of delay in such amounts being distributed due to Lambert's actions.

### Findings of Fact

1. Lambert has been practicing law in the federal court since 1985, but not continuously as he was suspended for a timeframe that he could not recall. (*Lambert testimony*)

2. The Estate retained Lambert to represent it in its claims against the Defendants for wrongful death and excessive force claims in the Northern District of West Virginia. (*testimony of Bruce Jones and Sherman Lambert*).

3. The parties executed a retainer agreement. That agreement called for a 40% contingency, 45% if the case went to trial, and on page 2/4 of the Agreement it said that if the Estate terminated Lambert, he would receive his quantum meruit – his hourly rate of $400/hour for the time that he put into the case. (*Plaintiff's Exhibit 1*)

4. The retainer contains no provision for an award of attorney's fees to Lambert if a dispute occurs between him and his clients. (*Plaintiff's Exhibit 1*)

5. During the litigation, the Defendants served discovery on the Plaintiff – interrogatories, requests for documents and requests for admissions ("RFAs"). (*testimony of Lambert, Plaintiff's Exhibit 2 - Court docket sheet*)

6. Lambert testified that he served discovery on the Defendants first – that was an incorrect statement, as the docket sheet reveals that Plaintiff's discovery was served <u>after</u> the Defendants' discovery was received. (*Ps Ex 2*)

7. Lambert testified he took numerous steps to get information from the Jones brothers so that he could respond to the discovery, but they were uncooperative. However, his statement of

services reveals only one entry related thereto – i.e., a phone call on January 21, 2014 (*Lambert testimony; Ps Ex 6*)

8. Lambert testified that he needed "documents" to respond to the discovery; yet later acknowledged he did <u>not</u> require documents to respond to the RFAs. (*Lambert testimony*)

9. Lambert testified that he wanted signatures to respond to the RFAs, as is his practice, yet he acknowledged that they are <u>not</u> required. (*Lambert testimony*)

10. Lambert was aware that, per the federal rules, RFAs must be answered within 30 days, or they are deemed admitted. (*Lambert testimony*)

11. Lambert did not request an extension of time from opposing counsel to respond to the RFAs. (*Lambert testimony*)

12. Lambert did not file a motion seeking an extension of time to respond to the RFAs. (*Lambert testimony*)

13. Lambert had the information he needed to respond to the RFAs as of 1/21/14, and was advised by the Jones brothers to deny the RFAs related to the possession of a knife by Wayne Jones. (*Lambert testimony*)

14. Lambert did not know what information the Jones brothers would have, as they were not there, and he had reviewed the record, reviewed the police report and other evidence upon which he could provide true, accurate, and complete responses to the RFAs. (*Lambert testimony*)

15. Lambert does not recall what information he received from the Jones brothers during their talk on 1/21/14, but he had the information that he needed, and had he served responses they would have been timely – yet he testified that he did not serve responses on 1/22/14 – and when asked he had no explanation as to why. (*Lambert testimony*)

16. For reasons Lambert is unable to provide, he did not timely file responses after the 1/21/14 phone conference with the Jones brothers, and instead he ultimately responded to the RFAs late – denying those RFAs that were related to Wayne Jones' alleged possession of the knife. (*Lambert testimony*)

17. After Lambert submitted the late responses to the Defendants' RFAs, the magistrate Judge granted the Defendants' Second Motion to Deem the Admissions admitted – including the Defendants' RFAs regarding to Wayne Jones' alleged possession of the knife. (*Ps Ex 3*)

18. Lambert was aware that a party (through their counsel if one has been retained) must in accordance with applicable rules and procedures of the Court, formally object to a magistrate judge's ruling and recommendation on time, but he did not do so. (*Lambert testimony*)

19. Lambert testified that he did not seek to contest the Court order deeming the Defendants' RFAs admitted because the Jones brothers told him "they didn't care, they just wanted to go to trial"). (*Lambert testimony*).

20. Lambert recognized the materially adverse impact that his failing to timely respond to the Defendants' RFAs and then not objecting to the magistrate judge's subsequent ruling would have on Plaintiff's case, both as to liability and its value, yet chose not to or otherwise failed to do so, because again, "the clients did not care, they just wanted to go to trial" – i.e. *in Lambert's view* the duty to zealously represent your client is somehow subordinate to and can curiously be relieved by the client's lack of legal acumen, expertise, or experience, as well as their conspicuous ignorance of the complexities of seminal procedural missteps that can occur during litigation (*Lambert testimony*)

21. The Defendants moved for summary judgment and this Court granted that relief, in large part on the Defendants' deemed admissions. (*Ps Ex 4*)

22. Lambert then filed a notice of appeal and began efforts to engage in mediation with a fourth circuit mediator. (*Lambert testimony*)

23. Lambert testified that it was required by the fourth circuit mediator's office that he obtain a signature giving him authority to settle the case, and advised the Jones brothers of the same. (*Lambert Nov 2014 letter in evidence*).

24. That fact was untrue, and Lambert later stipulated that the letter from the mediator's office did not reference any requirement that Lambert obtain a signature granting him authority to settle. (*Lambert testimony; stipulation*)

25. Lambert's Nov 2014 letter requested blanket authority to settle the case, which the Jones brothers refused to grant – i.e., they declined to sign it. (*Lambert testimony, Bruce Jones testimony*)

26. Around that time, there was an offer on the table from the Defendants, to settle the case for $250,000.00. (*Lambert testimony; Bruce Jones testimony*)

27. When the Jones brothers became aware of the fact the case was dismissed, based in large part on the Defendants admissions, they lost confidence in Lambert and terminated him. (*Bruce Jones testimony; Lambert testimony; stipulation Lambert was terminated from all representation of the Estate after filing the notice of appeal*)

28. The statement of services indicates Lambert is claiming 330.30 hours x $400/hour (the hourly rate agreed to in the retainer upon termination), totaling $132,120.00 in fees[1] (and $16,598.63 in costs[2]). (*Lambert Statement of Services at Ps Ex 6*).

29. The admissions materially and adversely affected the settlement value of the case. (*Lambert testimony*)

30. As a result of Lambert's failure to timely respond to the Defendants' RFAs, and his subsequent failure to timely object to the magistrate's order deeming those RFAs admitted, this Court granted summary judgment in favor of the Defendants, and the Plaintiff's first appeal was made subject to the Defendants' admissions deemed admitted, and the case was remanded to this Court to review the FRCP 36(b) factors, and decide whether the Estate should be allowed to withdraw said admissions. (*Ps Ex 7*)

31. Lambert was terminated after filing the Plaintiff's notice of appeal, and did not participate in the case in any way during any of the three subsequent appeals or later remand of the case from the Fourth Circuit to this Court (*Ps Ex 2; Fourth Circuit Docket Sheet*)

32. On the first remand, this Court reviewed the FRCP 36(b) factors and denied the request to withdraw the admissions, in part based on the time that had passed and the resulting prejudice to the Defendants, and reinstated its Order granting summary judgment (again, based in large part on the admissions). (see *Ps Ex 8*).

33. On the second appeal, the Fourth Circuit again remanded the case, holding that despite the admissions there was a question of fact whether excessive force was used. (*Ps Ex 8)*.

---

[1] Respectfully, given the docket in this case, anything north of 150 hours is … curious, and certainly 15+ of those 150 hours would be dealing with the untimely response to RFAs and motions related thereto. However, the setoff that Plaintiff now seeks significantly exceeds Lambert's claimed fees, so Plaintiff has not contested this figure in this brief, but reserves the right to do so in later proceedings if necessary.

[2] The Jones Estate does not challenge these costs; the Distribution Agreement reflects the beneficiaries have agreed to pay these costs from the proceeds of the settlement.

34. On remand, this Court then reached the issue of Qualified Immunity, and granted summary judgment on that issue, again based in large part on the admissions. (see *Ps Ex 9*)

35. On the third appeal, the Fourth Circuit again remanded the case, this time for trial, finding that qualified immunity was not appropriate given Wayne Jones was *detained at the time he had five (5) officers holding him down*, which was after the knife was identified. This was the basis of the argument raised on appeal (*Ps Ex 9*)

36. Lambert testified that he felt the case was going to go to trial despite the admissions, and that was all the clients wanted, given Wayne Jones "was detained when held down by five officers." (*Lambert testimony*). However, this Court will note that Lambert **did *not* make this argument to this Court in opposing summary judgment** – he obtained this theory from the appellate briefs and / or the Fourth Circuit's third opinion, and is now attempting to pass it off as his own (*See* Dkt#125 - *Lambert's Opposition to Motion for Summary Judgment -- Lambert at no time makes said argument nor cites to any case law related thereto - Lambert OPP to MSJ, p. 8-10; also see generally 4th Cir Opinion at Ps Ex 9*). Lambert merely refers to the situation prior to the shooting as "the other officers backed away" (Lambert OPP to MSJ, p. 16). At no time does Lambert make the argument that when five officers had Jones held down, he was restrained and applicable law clearly provided that once restrained excessive force may not be used – thus releasing Jones and then shooting him violated the law and his civil rights.

37. This Court can take judicial notice of the settlement in Breonna Taylor's case for $12 million, and the settlement of the William Green settlement in Maryland for $20 million[3], as they are matters of general public knowledge and public record.

---

[3] https://www.washingtonpost.com/local/legal-issues/william-green-police-settlement/2020/09/28/e2ce4130-0121-11eb-b7ed-141dd88560ea_story.html

38. But for the admissions, the Estate would have been able to argue at trial that Jones did not have a knife, did not try to stab an officer, and did not refuse commands to drop a knife as he did not have one, and address the statements of officers during the encounter as mistakenly based on the knife that fell out of one of the officer's pockets during the struggle. (*the record of evidence with which this Court is familiar*).

39. Without the admissions, the case would have had a greater settlement value (*Lambert testimony*).

40. Without the admissions, there likely would have been just the one appeal, i.e., on the issue of qualified immunity (perhaps two appeals at most), as opposed to the three appeals that occurred (*Ps Ex 7 – first appeal concerned the admissions; also see the orders of this Court following the first and second appeals, revealing the Court's decisions were in large part based on the admissions*).

41. The Estate's retainer with The Brown Firm PLLC called for a 40% contingency, and an additional 5% contingency for each appeal beyond the first. (*testimony of Bruce Jones*)

42. In July of 2020, the Estate settled the case with the Defendants for $3.5 million (*Fourth Circuit docket sheet, advising the Court the case settled as to all civil claims for monetary damages*).

43. Per the retainer fee with The Brown Firm, each appeal following the first cost the Estate $175,000.00 (5% of $3.5 million = $175,000.00). The total cost to the Estate for the second and third appeals is $350,000.00.

## CONCLUSIONS OF LAW[4]

As noted in Plaintiff's motion to Strike the Lien, "[a] charging lien is the *equitable right* of an attorney to have fees and costs due him for legal services in a particular suit secured by the judgment or recovery in such suit, is based on equitable considerations." *Trickett* at 227 (emphasis added), citing *Shaffer v. Charleston Area Medical Center, Inc.*, 199 W.Va. 428, 432, 485 S.E.2d 12, 16 (W. Va. 1997). The Lambert retainer at page 2/4 clearly states that if terminated Lambert will be paid $400/hour for his time (F-3). The issue before this Court is whether Lambert made mistakes as counsel for the Estate that equitably, as a setoff against his lien, mean that he is not entitled to any or all of his claimed $132,000.00 in attorney's fees and costs.

While Lambert continues in his pleadings to recite the standard for receiving fees[5], the actual issue before this Court is "[w]hen a former client challenges the right to attorney's fees or disputes the amount of fees claimed, a trial court cannot summarily award attorney's fees. The trial court must first make a determination that the attorney's fees are reasonable and such determination can only be made through the evidentiary process. . . . The former client is entitled to offer evidence of any credits, counterclaims, or defenses as well as to challenge whether or not the attorney helped to create the monetary judgment." *Trickett* at 228. Further, "[a]n attorney has no lien upon a fund which he is not instrumental in creating, and which never came to his hands." *Id.*, citing *Schmertz & Co. v. Hammond,* 51 W.Va. 408, 41 S.E. 184 (1902). Lambert conveniently ignores that he *obtained no result* other than getting the case dismissed on summary judgment for failure to timely respond to Defendants' requests for admissions, and failure to object to the magistrate's ruling and recommendation that adversely deemed them admitted (*see* Ps Ex 8, 4th

---

[4] References to the paragraphs of the above Facts will be as follows: "F-12" or "F-34" etc.

[5] The circumstances in the case *sub judice* do not arise from a lawyer in a firm leaving and proposing how to share the fees among those lawyers, when the retainer agreement and contract between the firm's lawyers do not so provide. *See* generally *Kopelman v. Collins*, 474 S.E.2d 910 (WV 1996)

Cir Opinion on 2nd Appeal, appeal of decision to deny motion to withdraw was unsuccessful given Lambert's failure to object to the magistrate's order). While there was an offer of $250,000.00 from the Defendants on the table after the first notice of appeal was filed (F-26), those funds "never came to his [Lambert's] hands," despite his efforts to obtain blanket authority from the Jones brothers to settle -- and he did so under misleading and false pretenses: that a signature from them was required in order to mediate and amicably resolve the case (F-23, 24, 25).

Applying the above facts to the law, it is clear Lambert's fees should be subject to a setoff, given the Estate's challenge and defenses to him receiving the same. Lambert failed, *without explanation*, to respond to the Defendants' RFAs in time (F-16). Further, he failed to object to the Court order deeming the RFAs admitted (F-18, F-19), despite being *fully aware* of the adverse and material impact they would have on the value of the case, and the issue of liability were the case to go to trial (F-20). Lambert argued that he cared about the case, and he "did all the work" and it would be unfair to deny him his $132,000.00 in fees. Despite those feelings, at a crucial stage in the case and to the Plaintiff's acute detriment, Lambert cast his legal role, expertise, and experience aside, and chose to not contest the Court's order deeming the Defendants' RFAs admitted. In doing so, he unwisely deferred to his clients who lacked the very skillset and professional representation for which they had retained him. In that regard, this case is not about whether or the degree to which Lambert cared for the work to which he was involved. It is about the quality, competency, and timeliness of his overall work product, which unfortunately included significant steps that he *failed* to undertake, where those omissions substantially affected the Plaintiff's case and its associated value.

The record and testimony all support that but for the admissions the case would *not* have been subject to three trips to the Fourth Circuit – perhaps only one and at most two (F-40). Per

the Estate's retainer with the Brown Firm, each subsequent appeal "cost" the Estate 5% of the settlement (F-41, F-43). The settlement reached was for $3.5 million, so each subsequent appeal cost the Estate $175,000.00. Had there only been one appeal, the Estate would have "saved" $350,000.00 – that is the setoff that should be applied in this case, and since it exceeds Lambert's $132,000.00 fee request, his underlying lien it should be struck in its entirety.

Further, but for the admissions the Estate of Wayne Jones would have presented to the Defendants during settlement talks (and the jury were if the case went to trial) an innocent man shot 22 times. The settlement and litigation value of the case would have been much greater without the admissions (F-38). That proposition – that the jury would have agreed that Wayne Jones did *not* have a knife (just as there is a *risk* of losing on liability *with* the admissions, and thus the $3.5 million settlement) - would have without question increased the value of the case for settlement purposes. Lambert conceded this integral point himself during his testimony (F-39).

This Court will note that the officers in the Breanna Taylor case had a legitimate defense – i.e., that they were returning fire while executing a no-knock warrant (legal at the time in Kentucky; yet the case settled for $12 million). A legitimate defense was also present in the recent William Green settlement in Maryland, where it was alleged the decedent was handcuffed in the back seat of the officer's vehicle and reached for the officer's gun when the officer shot him (case settled for $20 million, see footnote 3 *supra*). The point being, the mere opportunity to question the statements of the officers and de facto depose them during negotiations can greatly increase a case's settlement value. Due to Lambert's legal snafu's, the Jones Estate was deprived of the valuable, strategic opportunity to question whether Wayne Jones truly possessed a knife during his killing, and Lambert provided no suitable explanation or justification for his failures – as is evident by his testimony at the hearing.

Thus, as even acknowledged by Lambert himself, the case would have had a greater value at settlement or in litigation without the admissions, and he has no explanation for his failures regarding the same. While it would be difficult to estimate the increase in settlement value without the admissions, it can respectfully, be *easily estimated* that said value would have increased *at least* $132,000.00 (i.e. a settlement of $3,632,000.00), arguably could have been worth $1-3 million more than the $3.5 million settlement, which justifies the Plaintiff's requested setoff against Lambert's fee request.

## CONCLUSION

What Lambert "earned" as his fees is not the issue. Whether his fee is "reasonable" is not the issue (as expected, the entirety of Lambert's pleading recites case law on *this* issue, which is *not* the issue). The issue is what harm did his lawyering failures cost the Jones Estate, which should preclude any recovery or otherwise serve as a full setoff against what Lambert "earned." Lambert suggests that he earned $132,000.00 in fees. However, the Plaintiff's setoff request greatly exceeds that figure, given the $175,000.00 cost to the Estate for having to pursue the three appeals, and the *extremely conservative* estimate of the increase in the settlement value of $132,000.00 -- had Lambert responded to the RFAs timely (denying them as he did) -- or had he objected to the magistrate's order (the resulting decision by this Court, or by the Fourth Circuit on the 2nd appeal had he done so, may have allowed their withdrawal).

The above case law makes clear that when it comes to the equities, it is not "fair" for Lambert to receive his fees of $132,000.00, when his conspicuous failures (the defenses raised by the Estate) cost the Estate $175,000.00 for the second appeal, $175,000.00 for the third appeal, and at least [*the very conservative estimate of*] $132,000.00 in settlement value – i.e., *a total value (and deserving setoff) of $482,000.00.* Even were this Court to only accept one of the appeals, or

only the reduction in settlement value (the effect of the admissions on this value conceded by Lambert himself), it does not change the fact that each element of the setoff *exceeds* Lambert's claimed fees.

The Plaintiff acknowledges that this result may seem harsh, but Lambert's charge was to represent the client zealously and competently, not to act or omit to their detriment, which unfortunately occurred here. *This is the law* on this issue in West Virginia. The clear state of the law further reveals Lambert's efforts to enforce his charging lien are in bad faith given the very straightforward nature of the facts relevant to this issue as elicited during the hearing before this Court.

WHEREFORE, the Estate of Wayne Jones respectfully requests this Court Strike the Charging Lien and deny Lambert's attorney's fees and cost request *in toto,* in light of the setoff of something between $132,000.00 and $482,000.00, given the defenses raised by the Estate evidencing Lambert's failures – failures for which he has no explanation. *There is no* "conclusion of law" Lambert can support in his related pleading that supports a different outcome – it is expected he will once again ignore his mistakes (he did), the cost to the Estate of those mistakes (he did), and ignore the case law cited above that addresses whether he is entitled to his fees (he did). The truth is, Lambert has *no defense or legally viable response* to this setoff other than "I earned my fees and they are reasonable" – and that is **not a basis** to deny a setoff established by defenses referencing his mistakes that resulted in prejudice to the Plaintiff.

Further, given the bad faith associated with Lambert's efforts to enforce his lien revealed at the hearing based 1) on his several misrepresentations made during the hearing (*See* Facts 6-7, 23, 36); 2) the straightforward nature of this proceeding and of the law applicable hereto; 3) Lambert's abject refusal to address the applicable case law on the issue before this Court (*Trickett*,

etc.); and 4) Lambert's admissions during the hearing that a) he has no explanation as to why he did not respond to the Defendants' RFAs timely, nor b) why he did not object to the magistrate's order despite knowing the adverse and material impact that they would have on the issue of the Defendants' liability and the value of the case (both settlement or at trial) other than "the clients did not care" (which as the counsel of record with a duty to your client is not a basis to abandon one's duty as an attorney to act zealously and in your client's best interest), the Estate respectfully requests that this Court <u>award the Plaintiff $43,000.00</u>, established as follows:

1. Its interest on the settlement funds of 6% for in bad faith delaying distribution for several months (the settlement was reached in July of 2020); conservatively using September 8, 2020 (the date Lambert's response to the Motion to Strike was due), the parties' current filings will be submitted on November 2, 2020, per this Court's order, the Court will rule soon thereafter, then there is the ten day funding window per the settlement agreement, which will result in the funds being distributed at the earliest in the 2nd or 3rd week of November, which is a 60 day delay - 6% of $3.5million for 30 days = $17,500.00, two month delay = $35,000.00;

2. Its attorney's fees in the amount of $10,400.00 ($400/hour for 26 hours) for dealing with his bad faith Charging Lien as follows:

    a. 4 hours – motion to strike, C.Brown, review by P.Taylor

    b. 2 hours - opposition to Lambert's motion to dismiss, C.Brown. review by P.Taylor

    c. 2 hours - motion to strike the supplemental response, C.Brown. review by P.Taylor

15

    d.   2 hours prep for 10/19/20 hearing, P.Taylor

    e.   2 hours prep for 10/19/20 hearing for C.Brown

    f.   3 hours - 10/19/20 hearing for P.Taylor

    g.   7 hours – 10/19/20 hearing of C.Brown, 3 hours + travel 2 hours each way

    h.   4 hours – Findings of Fact and Conclusions of Law, C.Brown, review by P.Taylor

*Per their signatures below, counsel Paul Taylor and Christopher Brown swear and affirm to the time indicated above as put in by them in addressing Lambert's charging lien, and the reasonableness of the $400/hour rate.*

Respectfully Submitted,

**THE ESTATE OF WAYNE A. JONES**,

By Counsel,

**THE BROWN FIRM PLLC**

by: "s/" *Christopher E. Brown*
Christopher E. Brown, Esquire
VSB No.: 39852 (*pro hac vice*)
526 King St., Suite 213
Alexandria, VA 22314
703-924-0223
Fax 703-997-2362
cbrown@brownfirmpllc.com

by: "s/" *Paul G. Taylor*
Paul G. Taylor, Esq.
Law Office of Paul G. Taylor, PLLC
WVB No. 5874
134 West Burke Street,
Martinsburg, WV 25401
304-263-7900
taylorpaulg@aol.com

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the foregoing with the Court's ECF system this 30th day of October, 2020, which will send a copy hereof and notice of filing to all counsel of record registered therewith.

<u>"s/" *Paul G. Taylor*      </u>
Paul G. Taylor, Esq.