IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

ESTATE OF WAYNE A. JONES,
by Robert L. Jones and Bruce
A. Jones, Administrators of the
Estate of Wayne A. Jones,

    Plaintiff,

v.                                 CIVIL ACTION NO.: 3:13-CV-68
                                   (GROH)

THE CITY OF MARTINSBURG,
WEST VIRGINIA; PRC. ERIK HERB;
PFC. DANIEL NORTH; PTLM. WILLIAM
STAUBS; PTLM. PAUL LEHMAN; and PFC.
ERIC NEELY,

    Defendants.

## ORDER DENYING MOTION TO STRIKE CHARGING LIEN OF ATTORNEY LAMBERT, GRANTING MOTION FOR SETTLEMENT APPROVAL AND DISTRIBUTING SETTLEMENT PROCEEDS

    Currently pending before the Court are the Plaintiff's Motion to Strike Charging Lien of Attorney Lambert [ECF No. 278], wherein the Plaintiff moves the Court to strike Lambert's Notice of Attorney's Charging Lien and the Plaintiff's Motion for Settlement Approval [ECF No. 272], wherein the Plaintiff moves the Court to approve the settlement agreement reached with the Defendants and distribute the settlement funds. The Court considers each in turn below.

1

### I. MOTION TO STRIKE CHARGING LIEN[1]

On September 1, 2020, the Plaintiff filed a Motion to Strike Charging Lien of Attorney Lambert. ECF No. 278. Attorney Sherman Lambert ("Lambert") filed a Response in Opposition to the Motion to Strike [ECF No. 281] on September 8, 2020, and a Supplemental Response on October 14, 2020 [ECF No. 289]. This Court held an evidentiary hearing and heard oral arguments on the motion on October 19, 2020. ECF No. 295. After the hearing, both parties submitted their Proposed Findings of Fact and Conclusions of Law. ECF Nos. 298 & 300. Thus, this matter has been fully briefed and heard, and is ripe for review. For the following reasons, the motion is denied.

**A. Background**

Lambert was initially retained by Robert and Bruce Jones (collectively, "Co-Administrators") to represent the estate of Wayne Jones in its wrongful death action against the Defendants.[2] ECF No. 290-1. On March 18, 2013, Lambert and the Co-Administrators entered a valid, written contingency fee agreement ("the agreement"), wherein Lambert agreed to represent the Plaintiff at trial. As it relates to fees, the agreement provided:

> **Lawyer's Fee:** Client will pay to Lawyer, as compensation for legal services of any out-of-court Settlement, forty percent (40%) of all monies and things of value recovered.
>
> **Expenses:** Costs in addition to legal fees may include, but are not related to, court fees, filing fees, postage fees, facsimile transmissions and

---

[1] Because an attorney's charging lien must be attached in the final order distributing settlement funds, the Court considers this motion first to determine the proper amount of the charging lien. Syl. pt. 10, <u>Trickett v. Laurita</u>, 223 W. Va. 357. 674 S.E.2d 218 (2009).

[2] At the hearing on this motion, it was established that Robert Jones contacted Lambert requesting an initial consultation for a possible wrongful death action. After the initial consultation, Lambert assisted the brothers in becoming qualified to serve as co-administrators of the estate of Wayne Jones.

> reception fees ($1.00 per page), deposition[] fees or transcript fees, costs of obtaining bond fees or publication of notice fees, photocopies fees ($0.25 per page), expert witness fees, federal express or other delivery fees, costs for service of process fees, e.g.[,] sheriff or private process server, and private Detective fees.
>
> . . . .
>
> **Client Termination:** Client agrees to pay the law firm the rate of $400.00 per hour if [the] Client elect[s] to terminate the legal services of the law firm.

ECF No. 290-1 at 1–2.

On behalf of the Plaintiff, Lambert filed a complaint on June 13, 2013, commencing this action, Estate of Wayne Jones v. City of Martinsburg, Docket No. 3:13-cv-68. ECF No. 1. During the discovery process, the Defendants served the Plaintiff with Requests for Admissions ("RFAs") [ECF No. 27], which included requests that the decedent had refused to drop his knife after officers commanded him to do so and that he had previously been arrested and plead guilty to murder [ECF No. 38-1]. However, the Plaintiff missed the thirty-day deadline for answers to RFAs by two days. See ECF No. 58. The Defendants moved to deem the requests admitted [ECF No. 58], which the magistrate judge granted [ECF No. 75]. Thereafter, on October 15, 2014, this Court granted the Defendants' Motion for Summary Judgment after considering the evidence in the record, including the admissions. See ECF No. 162 at 1.

On October 21, 2014, Lambert filed a Notice of Appeal to the Fourth Circuit, appealing the district court's order on the motion for summary judgment. ECF No. 163. Lambert forwarded a letter to the Co-Administrators on November 8, 2014, which included a notice from the Fourth Circuit Mediator of the case's upcoming mediation meeting on November 12, 2014. ECF No. 290-1 at 9–13. However, on November 9, 2014, the Co-Administrators terminated Lambert as counsel via text message, stating that they had

"lost faith in [him] and [they had] an attorney in Virginia."[3] ECF No. 290-1 at 15. After receiving this message, Lambert filed a Motion to Withdraw as Counsel on November 10, 2014 [ECF No. 281-1 at 56], which the Fourth Circuit granted on January 7, 2015 [id. at 62]. On August 17, 2020, the Plaintiff reached an agreement with the Defendants for a settlement in the amount of $3,500,000.00 while represented by new counsel. ECF No. 272-1.

The Plaintiff filed this instant motion requesting that the Court strike Lambert's Notice of Attorney's Charging Lien, wherein Lambert claimed "any proceeds recovered by way of settlement and/or judgment by the court rendered" in this action. ECF No. 208 at 1. The Plaintiff argues that Lambert is not entitled to the charging lien because he was not instrumental in obtaining the settlement fund, and his failure to timely respond to the Requests for Admission ("RFAs") materially and adversely affected the settlement value of the case. The Plaintiff also avers that while Lambert is entitled to $132,120.00 in legal fees under the agreement,[4] this amount is offset by the Plaintiff's injuries.[5] Thus, the Plaintiff requests that the Court deny Lambert's charging lien on the settlement and award the Plaintiff $43,000.00 in compensation for Lambert's "bad faith [in] delaying distribution."[6] Lambert requests that the Court award him his "contractual and reasonable"

---

[3] At the hearing on this motion, the Plaintiff and Lambert both agreed that Lambert was terminated by the Co-Administrators.

[4] Lambert's legal fees are currently held in escrow pending resolution of this motion. ECF No. 272-5 at 1.

[5] The Plaintiff states that it expended an additional $350,000.00 in its appeals to the Fourth Circuit as a result of the district court's order granting summary judgment, and in any case, it can be "easily estimated" that the Plaintiff's settlement amount would have increased by at least $132,120.00 without the admissions. ECF No. 300 at 12–13.

[6] The amount represents a 6% interest on the settlement funds for a two-month delay in distributing the funds and the Plaintiff's attorney's fees incurred in this matter. ECF No. 300 at 15.

contingency fee of $1,400,000.00, representing forty percent of the settlement. ECF No. 298 at 15.

## B. Applicable Law

### 1. Attorney's Right to Impose a Charging Lien

Under West Virginia Code § 30-2-15, "[a]n attorney shall be entitled for his services as such to such sums as he may contract for with the party for whom the service is rendered; and, in the absence of such contract, he way recover of such party what his services were reasonably worth." As interpreted by the Supreme Court of Appeals of West Virginia, this statute and West Virginia's common law recognizes an attorney's right to recover unpaid fees by way of a charging lien. Syl. pt. 4, in part, Shaffer v. Charleston Area Med. Ctr., 199 W. Va. 428, 485 S.E.2d 12 (1997) (holding that an attorney's charging lien is "the equitable right of an attorney to have fees and costs due the attorney for services in a particular action secured by the judgment or recovery in such an action"); syl. pt. 1, Fisher v. Mylius, 62 W. Va. 19, 57 S.E. 276 (1907).

An attorney's charging lien is "confined to the judgment or fund recovered by him as attorney," syl. pt. 2, in part, Hazeltine v. Keenan, 54 W. Va. 600, 46 S.E.2d 609 (1904), and may include fees incurred by the attorney in enforcing his client's judgment lien rights, In re LaRosa, 449 B.R. 258 (Bankr. N.D. W. Va. 2011).[7] Correspondingly, "an attorney has no lien upon a fund which he is not instrumental in creating, and which never came to his hands." Syl. pt. 4, Schmertz & Co. v. Hammond, 51 W. Va. 600, 41 S.E. 184 (1902);

---

[7] See also Syl. pt. 2, in part, Renick v. Ludington, 16 W. Va. 378 (1880) (finding the attorney's lien included "not only the amount necessary to pay for his services and disbursements in the case . . . but also the amount necessary to pay for his services and disbursements in any other case, so connected with it as to form the basis on which such judgment or decree is rendered, or essential to the realizing of such judgment or decree").

e.g., Glickman v. Scherer, 566 So.2d 574, 575 (Fla. Dist. Ct. App. 1990) (per curium) ("It is not enough . . . to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services.").

An attorney is entitled to a charging lien on a judgement or fund if he can demonstrate the following four requirements:

> First, there must be a valid oral or written contract between the attorney and the attorney's client or former client.  Second, there must be a judgment or fund that resulted from the attorney's services.  Third, the attorney must have filed notice of his/her intent to assert a charging lien, and such notice must have been served on the attorney's client or former client against whose interest in said judgment or fund the lien is sought to be enforced. Fourth, notice of the lien must be filed before the proceeds of the judgment or fund have been distributed.

Syl. pt. 8, Trickett v. Laurita, 223 W. Va. 357, 674 S.E.2d 218 (2009).  If an attorney satisfies these four requirements, he is entitled to, and has properly imposed, an attorney's charging lien on the fund.  See id. at 366, 227.

### 2. Determining the Amount of the Charging Lien

Once an attorney properly imposes a charging lien, the court must determine the proper amount of the charging lien considering the specific facts of a case. May v. Seibert, 164 W. Va. 673, 682, 264 S.E.2d 643, 648 (1980).  Where an attorney is discharged pursuant to a contingency fee agreement, he may recover in *quantum meruit* for the reasonable value of his services rendered up to the time of discharge.[8]  Syl. pt. 1, in part,

---

[8] The Virginia Supreme Court adopted the same rule in Heinzman v. Fine, Fine, Legum & Fine, 217 Va. 958, 234 S.E.2d 282 (1977).  The court recognized that under Virginia's statute, an attorney is entitled to damages in the amount of the fee fixed in the contract if he was discharged by the client after the attorney had "performed [services] as contemplated in the contract."  Id. at 962, 285.  However, the court distinguished damages under contingent fee contracts as "recoveries premised upon conjecture" and stated that awarding a discharged attorney his contingency fee was "entirely speculative."  Id. at 964, 286.  Thus,

6

Clayton v. Martin, 108 W. Va. 571, 151 S.E. 855 (1930) (stating the attorney's "measure of damages is not the contingent fee agreed upon, but the value of his services rendered"). An attorney can only recover his entire contingency fee in the limited circumstance where he was discharged without cause, and the agreement "*explicitly* provides for the type of termination involved in the particular case."[9] Kopelman & Associates, L.C. v. Collins, 196 W. Va. 489, 496 n.7, 473 S.E.2d 910, 917 n.7 (1996) (emphasis added).

The reasonable value of the attorney's services cannot be compensated adequately by "merely multiplying the number of hours spent on the case by a billable hourly rate." Id. at 489, 910. The court must also consider a range of factors, as outlined in Aetna Casualty & Surety Co. v. Pitrolo:

> The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syl. pt. 4, in part, 176 W. Va. 190, 342 S.E.2d 156 (1986). Thus, courts have made *quantum meruit* awards in excess of an award based solely on the attorney's hourly rate.

---

the court held that *quantum meruit* was the most functional and equitable measure of recovery for attorneys who were discharged under a contingent fee. Id.

[9]   Discharged attorneys are not entitled to the whole contingent fee as a matter of law because of the "special relationship of trust and confidence between attorney and client [where] the client may terminate the relationship at any time, with or without cause." Statler v. Dodson, 195 W. Va. 646, 654, 466 S.E.2d 497, 505 (1995) (quoting Covington v. Rhodes, 38 N.C. App. 61, 65, 247 S.E.2d 305, 308 (1978), review denied, 296 N.C. 410, 251 S.E.2d 468 (1979)).

See Covington v. Rhodes, 38 N.C. App. 61, 247 S.E.2d 305 (1978) (affirming lower court's *quantum meruit* award of $2,000 where hourly rate total was $1032.50).

When a former client challenges the right to attorney fees or disputes the amount of fees claimed, the court must determine the reasonableness of the amount of the charging lien through an evidentiary process, such as by holding an evidentiary hearing. Trickett, 223 W. Va. at 367, 674 S.E.2d at 228 ("The trial court must first make a determination that the attorney fees are reasonable and such determination can only be made through the evidentiary process.") (quoting First Bank of Marietta v. Roslovic & Partners, Inc., 138 Ohio App. 3d 533, 545, 741 N.E.2d 917, 926 (2000)).  At the hearing, the attorney must present evidence of the value of the services rendered for the court to consider.  See Clayton, 108 W. Va. at 575, 151 S.E. at 857 (denying the attorney's charging lien because the attorney failed to provide an itemization of services rendered and stating, "in a suit on *quantum meruit* for services the value of the services must be shown and not left to conjecture").

Because the charging lien is an equitable remedy, the former client is "entitled to offer evidence of any credits, counterclaims, or defenses[,] as well as to challenge whether or not the attorney helped to create the monetary judgment." Trickett, 223 W. Va. at 367, 674 S.E.2d at 228 (quoting First Bank of Marietta, 138 Ohio App. 3d at 545, 741 N.E.2d at 926).  "[I]t is generally recognized that a lawyer's improper conduct can reduce or eliminate the fee that the lawyer may reasonably charge." Lawyer Disciplinary Bd. v. Ball, 219 W. Va. 296, 308–09, 633 S.E.2d 241, 253–54 (2006) (quoting Restatement (Second) of the Law Governing Lawyers § 37 (2000)) (alterations omitted).  The court may reduce or deny compensation to an attorney who engaged in clear and

serious violations of duty to a client during representation. Syl. pt. 5, in part, Ball, 219 W. Va. at 296, 633 S.E.2d at 241. Considerations relevant to the question of forfeiture include: (1) the gravity and timing of the violation, (2) its willfulness, (3) its effects on the value of the lawyer's work for the client, (4) any other threatened or actual harm to the client, and (5) the adequacy of other remedies. Id.

### C. Discussion

#### 1. *Attorney Lambert properly imposed a charging lien on the settlement fund.*

Lambert has satisfied the four-part test set forth in Trickett v. Laurita and is therefore entitled to a charging lien on the settlement fund. First, there is a valid contract between Lambert and the Plaintiff, evidenced by their agreement executed on March 18, 2013. The agreement defines the scope of Lambert's representation and details how he would be compensated for his legal services. Second, there is a proposed settlement fund for the action that Lambert initiated and filed. The Plaintiff argues that this settlement did not result from Lambert's actions and states that the "settlement was reached despite his failures to timely respond to the request for admissions and . . . timely object to the magistrate judge's ruling regarding the admissions." ECF No. 278 at 7. While this may be so, Lambert initiated the action for which the settlement was reached, litigated the case in the district court, and appealed the action to the Fourth Circuit. See ECF No. 290 at 9. Thus, this requirement is satisfied. See Trickett, 224 W. Va. at 366, 674 S.E.2d at 227 (finding that an attorney who was terminated by the client before the case went to trial properly asserted a charging lien to "a fund . . . that resulted, to some degree, from [the attorney's] services: the settlement ultimately reached between the parties in the underlying litigation").

Third, Lambert filed his intent to assert a charging lien as evidenced by his Notice of Attorney's Charging Lien, which sought to attach Lambert's interest in the settlement fund. ECF No. 208. He also served the notice on the Plaintiff. ECF No. 209. The Plaintiff's argument that it was notarized on October 15, 2016, does not affect the notice's validity because a notice of lien is not required to be notarized or witnessed, which even the Plaintiff acknowledges. ECF No. 278 at 7.

Fourth and finally, the settlement has not yet been distributed by the Court. The Plaintiff briefly argued that Lambert failed to impose a charging lien on the settlement fund because he filed his Notice of Charging Lien in 2014, well before there was a "fund to attach," as the parties reached an agreement this year, and the Court has not yet approved the settlement. ECF No. 278 at 4. There are some state charging lien statutes that direct an attorney to exercise his claim of a charging lien after a judgment is final and all residual disputes are concluded. E.g., Va. Code § 54.1-3932 (Virginia's attorney lien statute stating, "In causes of an action for annulment or divorce an attorney may not exercise his claim until the divorce judgment is final and all residual disputes regarding the marital property are concluded."). However, West Virginia's charging lien statute does not contain similar language, and the test set forth in Trickett only requires the attorney to give timely notice of his intent to attach a charging lien before the fund is distributed by the court. See 223 W. Va. at 366, 674 S.E.2d at 227. The court in Trickett also indicated that the requirement for timely notice was intended to safeguard the attorney's claim by ensuring the court would include the charging lien in its final order distributing the judgment. Id. at 368, 229; see also Aldar Tobacco Group, LLC v. American Cigarette Co., Inc., 577 F. App'x 903, 906 (11th Cir. 2014) (finding an attorney's notice of the

charging lien timely where he filed the lien before the lawsuit had been reduced to settlement). In light of the statutory language and Trickett, the Court finds that Lambert satisfied this requirement by filing his Notice of Lien before the settlement funds have been distributed.

Thus, Lambert has met the four requirements set forth in Trickett and has properly imposed a charging lien to the settlement fund.

### 2. Attorney Lambert is entitled to recover in quantum meruit.

As an initial matter, the appropriate legal standard for determining Lambert's reasonable compensation is *quantum meruit*. West Virginia case law has consistently upheld that where an attorney is discharged, "his measure of damages is not the contingent fee agreed upon, but the value of his services rendered." Syl. pt. 1, in part, Clayton, 108 W. Va. 571, 151 S.E. 855. The limited exception for attorneys who are discharged without cause does not apply here because the agreement did not explicitly provide the circumstances where his termination would be without cause. Thus, Lambert may not recover his contingency fee, but may recover the reasonable value of his services.

Moreover, the Court rejects the Plaintiff's argument that Lambert should be denied any compensation for his legal services. Courts are generally reluctant to deny an attorney compensation for services performed. See May, 164 W. Va. at 681, 264 S.E.2d at 647 (quoting Suffolk Roadways, Inc. v. Minuse, 56 Misc. 2d 6, 287 N.Y.S.2d 965 (1968)). Although an attorney's charging lien is an equitable right, and therefore subject to setoffs by the former client's credits, counterclaims, and challenges, it is rare for an attorney's reasonable compensation for his services to amount to zero. For example, in

Tunison v. Guthrie, the court found that the attorney had so completely failed to perform under his retainer contract that he was "deprive[d] . . . of the right to enforce [the] contract" and recover damages for breach, but stated that it was "not to be doubted" that he performed services of considerable value and could have been entitled to recovery in *quantum meruit*. 252 F. 526, 530 (4th Cir. 1918). There, a sales agency was on the verge of foreclosure. Its attorney promised to negotiate a transfer with another agency, wherein the agency would assume the mortgage. Id. at 526. However, the contract did not discharge the client's liability, and the court stated, "All [the attorney] did . . . amounted to little more than a transfer of the sales agency . . . with the incidental extension of time on the fuel company's debt." Id. at 531. The Court found that although the attorney had not kept any of his promises to the client, he would have been able to recover compensation for the work he did perform in *quantum meruit*. Id.

In contrast, courts will deny compensation to attorneys who engage in intentional misconduct in violation of the West Virginia Rules of Professional Conduct. "As a matter of policy, a lawyer should be regarded as 'earning' his fee only when he provides legal services to his client in a manner consistent with his professional duties[.]" Kourouvacilis v. Am. Fed'n of State, Cnty. & Mun. Employs., 65 Mass. App. Ct. 521, 535 n.22, 841 N.E.2d 1273, 1284 n.22 (2006). In Lawyers Disciplinary Board v. Ball, 219 W. Va. at 296, 633 S.E.2d at 241, the Supreme Court of West Virginia stated that complete restitution to the attorney's client was the only adequate remedy where the attorney misappropriated his client's funds by drafting their wills so that his adult sons were the primary beneficiaries. The court stated that his "egregious misconduct" was intentional and caused actual harm to the client, and therefore complete restitution was required to condemn the misconduct

for the public and to deter other attorneys from doing the same. Id.; see also King v. White, 265 Kan. 627, 642, 962 P.2d 475, 486 (1998) ("Attorneys who act unscrupulously towards the interests of their client are not entitled to compensation."); Hoppe v. First Midwest Bank of Poplar Bluff, 899 S.W.2d 879, 883 n.4 (Mo. App. 1995) ("Complete forfeiture of attorney fees occurs when an attorney's 'willfully blameworthy' conduct clearly and seriously violates the attorney's duties and thereby destroys the attorney-client relationship.") (quoting Int'l Materials Corp. v. Sun Corp., Inc., 824 S.W.2d 890, 895 (Mo. 1992)).

The Plaintiff argues that because Lambert "chose to not contest the Court's order deeming the Defendants' RFAs admitted," despite being "fully aware of the adverse and material impact they would have on the value of the case," he should forfeit his legal fees.[10] ECF No. 300 at 11. It is true that under the West Virginia Rules of Professional Conduct, the attorney is responsible for making decisions regarding technical, legal, and strategic matters, and that timely filing the answers to the RFAs and any objections was Lambert's charge. W. Va. Rules of Prof'l Conduct R. 1.2 (2009). However, failing to timely file answers or objections is more similar to the rule violation in Tunison, where the attorney's legal strategy was ill-conceived and mishandled, rather than the "clear and serious violation of [his] duty" in Ball, which violated the client's trust and best interests.[11]

---

[10]    The Plaintiff's arguments challenging Lambert's charging lien ring in legal malpractice—that but for Lambert's failure to timely answer the RFAs or object to the magistrate judge's ruling, the Plaintiff would have obtained a greater settlement. If the Plaintiff wished to assert this argument against Lambert for his failure to timely answer the RFAs and to object to the magistrate judge's order, the Plaintiff should have brought a negligence claim against Lambert. However, its negligence claim is now time barred. Syl. pt. 1, Hall v. Nichols, 180 W. Va. 466, 400 S.E.2d 901 (1990). Thus, the Court will not consider the Plaintiff's time-barred negligence claim when considering any setoffs to Lambert's lien.

[11]    At the hearing, Lambert testified that his plan was to still go to trial with the admissions because whether Jones had a knife did not prevent the Plaintiff's excessive claim, and thus, the admissions were not intended to hurt the Plaintiff's case.

See also King, 265 Kan. at 267 (complete restitution warranted where the attorney forged the client's signature on settlement agreements). Thus, similar to the attorney in Tunison, Lambert is still entitled to recover in *quantum meruit*.

> **3. Attorney Lambert is entitled to be awarded his legal fees, costs expended, and attorney's fees incurred defending the Plaintiff's motion to strike the charging lien.**

The Court considers the factors outlined in Pitrolo in relationship to the evidence presented by the parties in order to determine Lambert's reasonable compensation. Lambert is an experienced attorney, who has litigated similar matters in the Northern District of West Virginia. See ECF No. 298 at 10 (citing Steven C. Scott v. City of Ranson et al., 3:07-cv-138). Lambert initiated the case by qualifying the Co-Administrators so that they could bring the action on behalf of the Estate, and then by filing the complaint in this Court. He developed the legal strategy of excessive police force for the case. He litigated the matter for over a year and a half, through the pleading, discovery, and motion practice phases. He expended in excess of 330 hours on the Plaintiff's case, and as the sole practitioner in his law firm, his commitment to the case limited his time and availability to retain new matters. He expended over $16,000.00 in advance costs on behalf of the Plaintiff. Lambert testified that he went above and beyond the normal duties of a lawyer in order to work with his clients, traveling to meet the Co-Administrators outside of the office and outside of normal working hours, and scheduling and coordinating press conferences to raise case's awareness. The Court also heard testimony that the Plaintiff was often difficult to reach, making communication difficult. All of these factors convince the Court that Lambert made a substantial commitment to the client and the case. See Abramson ex rel. Abramson v. Laneko Eng'g, 370 F. Supp. 2d, 498, 503 (S.D. W. Va.

2005) (finding the attorney's expenditure of a significant amount of money in advance costs and frequent communications with the client weighed in favor of a substantial fee for the attorney).

However, other factors temper the fee determination. While Lambert's work established the case and must at least be partially credited for leading to the settlement, the Plaintiff's new counsel, the Brown Firm PLLC ("TBF") spent twice as much time on the case. TBF appealed the case three times to the Fourth Circuit, with the first appeal specifically addressing the admissions that were admitted from Lambert's failure to timely answer or object. TBF also negotiated the current settlement agreement with the Defendants, in the amount of $3,500,000.00. Thus, TBF did much of the work that led to the proposed settlement agreement currently before the Court.

Considering that Lambert litigated the case through the district court, initiated discovery, and developed the case's legal claim, the Court finds that Lambert is entitled to recover his legal fees based on the hourly rate provided in the agreement, the costs expended during representation of the Plaintiff, and his attorney's fees in defending against the Plaintiff's motion to strike the charging lien. Lambert's itemization of work he performed in the case provides that he spent 330.30 hours working on the case, which totals $132,120.00 in legal fees based on his hourly rate of $400. ECF No. 279-5 at 22. The itemization further provides that he expended $16,598.00 in costs. Id. at 25. Finally, his Statement of Attorney's Fees provides that he has agreed to pay Attorney Black a flat fee of $20,000.00 for representing him in defending him against the Plaintiff's motion to strike. Thus, Lambert's recovery in quantum meruit equals $168,718.00.[12]

---

[12] The Court notes that case law from states that follow the same majority rule as West Virginia establishes that outgoing firms that file complaints and participate in some amount of discovery generally

15

### D. Conclusion

Lambert has properly imposed a charging lien on the settlement agreement. Therefore, the Court **DENIES** the Plaintiff's Motion to Strike Charging Lien. ECF No. 278. The Court finds that Lambert should be **AWARDED** his quantum meruit award of $168,718.00, which equals his legal fees based on his hourly rate, costs expended during representation, and attorney's fees incurred in defending against the Plaintiff's motion to strike. Correspondingly, because Lambert properly attached his charging lien to the settlement funds, the Court denies the Plaintiff's request for 6% interest and attorney's fees.

## II. MOTION FOR SETTLEMENT APPROVAL AND DISTRIBUTION OF FUNDS

The Plaintiff filed a Motion for Approval of Settlement and Distribution of Funds [ECF No. 272], wherein it moves the Court to approve the settlement agreement reached with the Defendants and distribute the proceeds thereof. Based on the memorandum of law in support of the motion [ECF No. 272-1] and the Agreement of Beneficiaries Concerning Distribution of Wayne Jones Settlement Proceeds [ECF No. 272-5], the Court finds that all eligible beneficiaries are before the Court and that none have suffered any coercion or duress. The Court also finds that there is no evidence of fraud, either upon this Court or upon the beneficiaries.

---

recover between 10% and 25% of the eventual attorneys' fees. See Abramson ex rel. Abramson v. Laneko Eng'g, 370 F. Supp. 2d, 498, 498 (S.D. W. Va. 2005) (granting the outgoing attorney 10% and the new attorney 12%); Borg v. 86th & 3rd Owner, LLC, 2012 WL 234383, No. 08 Civ. 05913 at *9–10 (S.D.N.Y. Jan. 24, 2012) (collecting cases where parties who participate in preliminary stages of case "recover[ed] between 10% and 25% of an eventual attorneys' fee"). If the Court had used this method in determining Lambert's quantum meruit award, it could have awarded Lambert four and a half (4.5) percent of the settlement fund and reached the same conclusion.

For the foregoing reasons, the Court **GRANTS** the Motion for Settlement Approval [ECF No. 272] and **APPROVES** the settlement agreement.

### III. CONCLUSION

The Court **DENIES** the Plaintiff's Motion to Strike Charging Lien [ECF No. 278]. The Court **GRANTS** the Motion for Settlement Approval [ECF No. 272] and **APPROVES** the settlement agreement in the amount of $3,500,000.00. Pursuant to West Virginia Code § 55-7-7, it is hereby **ORDERED** that the settlement funds be distributed in accordance with the Agreement of Beneficiaries Concerning Distribution of Wayne Jones Settlement Proceeds [ECF No. 272-5], with $168,718.00 **RELEASED** from escrow and **DISTRIBUTED** to Attorney Sherman Lambert. The Plaintiff is **DIRECTED** to pay the fee promptly upon receipt of the settlement proceeds.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** December 10, 2020

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE